IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN ELMY, individually and on behalf of all other similarly situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>WESTERN EXPRESS, INC., NEW HORIZONS LEASING, INC., and JOHN DOES 1-5,<br><br>    Defendants. | Case No.: 3:17-cv-01199<br>Judge Campbell<br>Magistrate Judge Frensley |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COLLECTIVE & CLASS ACTION COMPLAINT**

Defendants Western Express, Inc. ("Western") and New Horizons Leasing, Inc. ("New Horizons") (collectively "Defendants"), by their undersigned counsel, hereby submit this Memorandum of Law in Support of their Partial Motion to Dismiss ("Motion to Dismiss" or "Motion") Plaintiff's Collective and Class Action Complaint ("Complaint"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Causes of Action II through VII (hereinafter "Rule 23 Claims") should be dismissed from Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

**I.    INTRODUCTION**

On August 25, 2017, Plaintiff Elmy filed his Collective and Class Action Complaint based upon Western and New Horizons' alleged violations of the Fair Labor Standards Act ("FLSA"). (D.E. 1, ¶¶ 120-123). Plaintiff seeks to bring a collective action, pursuant to 29 U.S.C. § 201, *et*

1

*seq*. for "Defendants failure to pay Plaintiffs minimum wages through misclassification of Plaintiff lease operators as 'independent contractors' when by law they are employees." (D.E. 1, ¶ 6). Additionally, Plaintiff seeks to bring a putative class action, arguing that "[t]he Second through Sixth[1] Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3)." (D.E. 1, ¶ 24). Plaintiff's proposed Rule 23 Claims are the subject of this Memorandum of Law and corresponding Motion. Those Rule 23 Claims should be dismissed with prejudice.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) serves as a defense to pleadings that "fail[] to state a claim upon which relief may be granted." Indeed, "[t]he purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 291 (6th Cir. 2015) (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The Court, in considering a Rule 12(b)(6) motion, "must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party." *Sutton v. Cmty. Health Sys.*, No. 1:16-cv-01318-STA-egb, 2017 U.S. Dist. LEXIS 133712, at *4-5 (W.D. Tenn. Aug. 22, 2017) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true . . . unwarranted factual inferences." Ruffin v. Nicely, 183 F. App'x 505, 510 (6th Cir. 2006) (quoting *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 608 (6th Cir. 2005) (citation omitted)).

---

[1] Plaintiff only alleges that the Second through Sixth causes of action are properly maintainable as a Rule 23 class in this paragraph. In Plaintiff's Prayer for Relief, however, he requests that the Seventh cause of action—Tennessee Involuntary Labor Servitude—also be certified as a class claim. (*See* D.E. 1, p. 30). Therefore, Defendants understand that Plaintiff seeks to certify a Rule 23 class under the Second through Seventh causes of action.

2

While Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim," a "plaintiff must allege sufficient facts to show that the claim is 'plausible.'" *Davis v. Hill*, No. 3:15-cv-00936, 2017 U.S. Dist. LEXIS 40419, at *5 (M.D. Tenn. Feb. 21, 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In order for a complaint to pass the plausibility requirement, it requires "direct or inferential allegations respecting all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). This amounts to more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555; *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). If a plaintiff's complaint is unable to "raise a right to relief above the speculative level," then it will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

### III. LEGAL ANALYSIS

#### A. Plaintiff's Common Law Fraud Cause of Action, (Cause of Action II), Is Not Pled with Sufficient Particularity.

Plaintiff's second cause of action alleges Fraud against Western and New Horizons. "The elements of fraud under Tennessee law are as follows: (1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representations falsity, and (3) injury caused by reasonable reliance on the misrepresentation." *Asemota v. Suntrust Mortg.*, 2012 U.S. Dist. LEXIS 83744, at * 30 (W.D. Tenn. June 18, 2012) (citing *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005)). Morever, pursuant to Fed. R. Civ. P. 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud." This standard is essentially the same in Tenn. R. Civ. P. 9.02 which states that all claims for fraud "shall be stated with particularity." *See Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 481–82 (6th Cir. 2014) (noting the similarity). As the Sixth Circuit has noted, "[t]o plead fraud with particularity, the plaintiff must

3

allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3), the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quotation and internal punctuation omitted). Plaintiff fails to meet this exacting standard which is applicable to his allegation of fraud. In fact, Plaintiff's fraud cause of action section does not even allege or state what representations allegedly constitute the basis for the fraud claim, much less state them with particularity.

> Specifically, Plaintiff alleges that:
>
> Defendants engaged in fraud in that (1) Defendants made a representation of a present or past fact; (2) the representation was false when it was made; (3) the representation involved a material fact; (4) Defendants either knew that the representation was false or did not believe it to be true or that Defendants made the representation recklessly without knowing whether it was true or false; (5) Plaintiffs did not know that the representation was false when made and were justified in relying on the truth of the representation; and (6) Plaintiffs sustained damages as a result of the representation.

(Compl. at ¶ 125). Plaintiff also claims that he and members of the putative class "acted reasonably" and were ignorant of the falsity of these claimed representations, which caused them to "suffer damages and financial losses, including, among other things, loss of wages and interest thereon, and assuming debt and expense obligations." (Compl. at ¶¶ 126, 127).

Under a separate factual background section of the Complaint, designated as "Fraud and Misrepresentation That Owner Operators Would Earn Over $225,000 Annually," the Complaint also fails to plead with sufficient particularity Plaintiff's fraud cause of action. According to the generalized allegations described in the paragraphs under this section, Defendants have allegedly: misrepresented that drivers "will earn over $225,000 annually." (Compl. at ¶ 46); posted "ads" on Facebook that represent "how much money lease operators will earn and how many miles they will drive." (Compl. at ¶ 47); and, "[i]mmediately prior to signing the Contract and Lease," allegedly made presumably oral representations "about the Owner Operator program including,

4

but not limited to, that they can take home time whenever they want, that they will get their choice of loads, that they will be given the best loads, and that Western will keep them moving." (Compl. at ¶ 48). Notably, not a single allegation is pled with any degree of particularity as required.

Instead, Plaintiff bases his common law fraud cause of action almost exclusively on claimed generalized and vague oral representations and advertisements that were allegedly made to him at some unspecified time prior to his signing of the lease with New Horizons and the separate independent contractor contract with Western. These allegations are not tied or tethered to any particular fraud time, place, or person and do not describe the substance of the alleged misrepresentations with requisite particularity. None of Plaintiff's fraud allegations identify a particular actor, advertisement, or representation as is required under applicable law. *See Gray v. Bank of Am., N.A.,* 2012 U.S. Dist. LEXIS 109536, at *7–8 (E.D. Tenn. Aug. 6, 2012).

Not only has Plaintiff failed to plead this cause of action with particularity, he relies on claimed oral representations that were allegedly made to him alone. Plaintiff offers no factual claims that any other putative class member experienced the same alleged conversation or saw the alleged advertisement. Instead, the allegations in support of his fraud claim are generalized and are comprised of alleged vague oral statements that were purportedly made by an unnamed Western representative at some time prior to Plaintiff's signing of either of the two separate agreements. (*See* Compl. ¶ 48). Even if these allegations were true—which Defendants deny entirely—Plaintiff offers no proof that these statements and/or representations were made to all putative class members. Finally, Plaintiff's allegations of justified reliance are "supported by mere conclusory statements, [which] do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For the reasons stated above, Plaintiff's Tennessee Common Law Fraud claim must be dismissed.

5

### B. Plaintiff's Common Law Negligent Misrepresentation Claim, (Cause of Action III), Is Not Pled with Sufficient Particularity.

Plaintiff's third cause of action alleges negligent misrepresentation against Western and New Horizons. Similar to a common law fraud claim, in order "to succeed on a claim for negligent misrepresentation, a plaintiff must establish that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W. 3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). Like fraud, "[f]ederal courts in Tennessee have concluded that claims 'of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard in Rule 9(b).'" *Pugh v. Bank of Am.*, No. 13-2020, 2013 U.S. Dist. LEXIS 92959, at *42-42 (W.D. Tenn. July 2, 2013) (quoting *Asemota v. Suntrust Mortg.*, No. 11-2816-STA-dkv, 2012 U.S. Dist. LEXIS 83744, at *31 (W.D. Tenn. June 18, 2012); *see also In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873, 881 (M.D. Tenn. 2009). Plaintiff has failed to meet this burden on his negligent misrepresentation claim as well.

Plaintiff alleges generally that Defendants "engaged in negligent misrepresentation by, in the course of their business, profession, or employment, or in any other transaction in which they had a pecuniary interest, supplying false information for the guidance of Plaintiffs in their business transactions, and by failing to exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs." (Compl. at ¶ 129). Plaintiff appears to rely entirely on the same allegations presented in support of its common law fraud claim for his common law negligent misrepresentation claim. These allegations vaguely describe a sentence on Western's website and alleged individual, vague oral communications that were made to Plaintiff.

6

Still, no facts are alleged or pled which identify who communicated the information and what specifically was told to Plaintiff or any other purported class members in relation to that communication. It is well-accepted in Tennessee that "the tort of negligent misrepresentation cannot be based on conjecture, statements of opinion, puffing and sales talk, or representations of future events." *Am. Access. Int'l, LLC v. Conopco, Inc.*, No. 3:15-CV-49-TAV-HBG, 2016 U.S. Dist. LEXIS 18919, at *20 (E.D. Tenn. Feb. 17, 2016) (internal quotations omitted). Plaintiff makes no claim that Western and/or New Horizons personally guaranteed each independent contractor $225,000 take home pay annually or any other specific amount of guaranteed compensation. Instead, Plaintiff's claims are no more than alleged generalized impressions of one individual based his brief orientation as an independent contractor driver.

Finally, like Plaintiff's fraud claim, his reliance here is "supported by mere conclusory statements, [which] do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Clearly Plaintiff "[has] not alleged sufficient facts taken as true to nudge [his] negligent misrepresentation claim across the line from conceivable to plausible." *Hafer v. Medtronic, Inc.*, 99 F. Supp. 3d 844, 866 (W.D. Tenn. 2015) (internal quotations omitted). For these reasons, Plaintiff's Tennessee Common Law Negligent Misrepresentation claim must be dismissed.

### C. Plaintiff's UCC Lease and Contract Unconscionability Claim, (Cause of Action IV), Fails to State a Claim.

Plaintiff's fourth cause of action alleges that the lease entered into between Plaintiff and New Horizon, and the separate independent contractor contract entered into between Plaintiff and Western are "unconscionable and thus unenforceable under the Tennessee Uniform Commercial Code, Tenn. Code Ann. §§ 47-2-302 and 74-2A-108, as the provisions of the Agreements are so one-sided, in view of all the facts and circumstances, that Plaintiffs were denied any opportunity

7

for meaningful choice."[2] (Compl. ¶ 133). Plaintiff's unconscionability claim appears to rest exclusively on the fact that the lease agreement and the separate independent contractor contract allegedly "are presented to Plaintiffs on a 'take-it-or-leave-it basis' with no opportunity for Plaintiffs to negotiate any of their terms." (Compl. ¶ 134). Because of the allegedly unconscionable provisions in the two separate contracts, Plaintiff argues that he and the members of the putative class suffered "loss of wages" and "assuming of debt and expense obligations." *Id*. at ¶ 135.

As an initial matter, "Tenn. Code Ann. § 74-2A-108", as cited by Plaintiff in his Complaint on page 24, does not exist, is not codified as statute in Tennessee and is therefore not a part of Tennessee's Annotated Code. Therefore, Plaintiff's unconscionability claim fails because it is not supported by any law which has been codified in Tennessee. However, should the Court proceed under the assumption and interpretation that Plaintiff intended to plead unconscionability under Tennessee's Uniform Commercial Code ("UCC") § 2A-108, Plaintiff's unconscionability claim also fails as of matter of law and is without merit.[3]

Turning to the next statute alleged by Plaintiff in support of its UCC unconscionability claim, Tenn. Code Ann. § 47-2-302(1) states the following:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable

---

[2] It is important to note that Tenn. Code Ann. § 74-2A-108, which is cited in Plaintiff's complaint as supporting his unconscionability claim, does not exist. *See supra*, pg. 8.

[3] "In determining whether a contract is governed by the UCC, Tennessee has adopted the 'predominant factor' approach." *Corso Enters. V. Shop at Home Network*, 2005 U.S. Dist. LEXIS 48371, at *20 (M.D. Tenn. Sept. 26, 2005) (citing *Hudson v. Town and Country True Value Hardware*, 666 S.W.2d 51, 53-54 (Tenn. 1984)). "Under this test, if the essential bulk of the assets to be transferred qualifies as 'goods,' then it is appropriate to characterize the transaction as one for the sale of goods, and the UCC governs; if the predominant assets are non-goods, then the UCC has no application." *Id*.

Here, Plaintiff attempts to conflate his lease with New Horizons for the truck and his separate contract with Western as an independent contractor driver into a contract for the "sale of goods." No part of either his lease or his separate independent contractor contract, however, deals with the sale of goods themselves. The UCC applies primarily to the sale of goods between merchants, not to contracts for the retention of independent contractor services, and therefore such a claim under the UCC is inappropriate here and without merit.

8

clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Importantly, this statute does not frequently appear in caselaw. When it does, it is strictly in the context of providing allegedly false information to a prospective purchaser or investor. See *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 794-95 (W.D. Tenn. 2005) (misleading statements as to home refinancing funds); *MBI Motor Co. v. Lotus/East, Inc.*, 506 F. 2d 709, 713 (6th Cir. 1974) (breach of warranty disclaimer claim); *Bunge Corp. v. Miller*, 381 F. Supp. 176, 179 (W.D. Tenn. 1974) (breach of contract claim for failure to deliver on a contract for the sale of soybean bushels).

To Defendants' knowledge, such a claim has not been brought before any court in Tennessee for an allegedly unconscionable provision of a contract for independent contractor services. This is likely because the statute was intended to govern unconscionable commercial contracts for goods or services, not a contract between a principal and an independent contractor for the performance of services as a truck driver or otherwise. Therefore, such a claim is not supported by the cited statutory law and is invalid.

### D. Plaintiff's Tennessee Common Law Unjust Enrichment Claim, (Cause of Action V), Is Without Merit.

Plaintiff's fifth cause of action alleges common law unjust enrichment against Western and New Horizons. In support of his unjust enrichment claim, Plaintiff alleges that "[l]ease operators conferred a benefit on Defendants by acting as employees," but were misclassified as lease operators so Western and/or New Horizons "could avoid their obligations to lease operators as employees." (Compl. at ¶ 88). As a result, Plaintiff argues that it is "inequitable for Defendants to retain the benefits of lease operators' employment without paying them for the value of such

9

employment conferred." *Id*. Plaintiffs seek "restitution of all benefits conferred upon Defendants, including but not limited to, the disgorgement of any unjust profits." *Id*. at ¶ 139.

Plaintiff's unjust enrichment claim fails for one primary reason: it is undisputed by both parties that Plaintiff, and the putative class he is attempting to represent, all signed a contract to lease a truck from New Horizons and all signed a separate contract to join Western as independent contractor owner operators. "Tennessee courts will impose a contractual obligation under an unjust enrichment theory *where there is no contract between the parties* or a contract has become unenforceable." *Stiers v. State Farm Ins.*, No. 3-11-CV-437, 2012 U.S. Dist. LEXIS 87591, at *18 (E.D. Tenn. June 25, 2012) (emphasis added). However, a "Plaintiff cannot recover under an unjust enrichment theory if a valid contract existed, since a contract may not be implied where a valid contract exists on the same subject matter." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005); *see Jaffe v. Bolton*, 817 S.W. 2d 19, 26 (Tenn. Ct. App. 1991) ("The primary purpose of implied contracts is to impose an obligation that ought to be done as a matter of justice and equity in the absence of express contracts. A contract cannot be implied, however, where a valid contract exists on the same subject matter.").

Here, it is undeniable that two separate contracts existed between the parties. Even assuming, *arguendo*, that Plaintiff and the putative class could be found to have been improperly misclassified as independent contractors, which Defendants deny, such a finding would still not serve to save this unjust enrichment claim since the written contractual agreement whatever its nature, exists between the parties, resulting in a valid contract, Plaintiff's unjust enrichment claim fails and must be dismissed.

  **E. Plaintiff's Federal Forced Labor Claim, (Cause of Action VI), Fails to State a Claim Upon Which Relief Can Be Granted and Is Grossly Inappropriate Here.**

10

Plaintiff's sixth cause of action alleges that Western and New Horizon "obtained the continuous labor of Plaintiffs by using threats of serious financial and professional harm." (Compl. at ¶ 141). According to the Complaint, Defendants specifically "threatened . . . [to] use the legal system, debt collection system, and DAC Reports to enforce the crushing debt," which "caused Plaintiffs to engage in forced labor . . . in violation of the federal forced labor statutes, 18 U.S.C. §§ 1589 and 1595." (Compl. at ¶¶ 143, 144).

18 U.S.C. § 1589(a) provides that it is a violation of the statute to:

"knowingly provide[] or obtain[] the labor or services of a person by any one of, or any combination of, the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm of physical restraint ….

The other statute alleged by Plaintiff in his Complaint in support of this claim, 18 U.S.C. § 1595, provides that "[a]n individual who is a victim of a violation of this chapter [18 USCS §§ 1581 et seq.] may bring a civil action against the perpetrator." 18 U.S.C. § 1595(a). The chapter referenced by § 1595, 18 USCS §§ 1581 *et seq.*, refers to peonage (§ 1581); vessels for slave trade (§ 1582); enticement into slavery (§ 1583); sale into involuntary servitude (§ 1584), among other statutes specifically dealing with slavery. In fact, 18 U.S.C. § 1595 is commonly referred to as the Trafficking Victims Protection Act, or TVPA.

Plaintiff's reliance on these statutes is, at a minimum, extremely misguided. First, "Congress intended [§ 1589] to address serious trafficking, or cases 'where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire

11

consequences by means other than overt violence.'" *United States v. Dann*, 652 F. 3d 1160, 1170 (9th Cir. 2011) (quoting H.R. Rep. No. 106-939, at 101 (Conf. Rep.)). Case law overwhelmingly supports Congress' intent that this statute would apply to forced labor in the context of trafficked individuals, not individuals who reside in this country, who entered into contracts and are simply unhappy with their business deal or compensation.[4] The same is true with § 1595. "When it enacted the Trafficking Victims Protection Act ("TVPA") in 2000, Congress declared that the purposes of the TVPA are to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.'" *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) (codified as amended at 18 U.S.C. § 1589 et seq.)).

As a final nail in this already well-sealed coffin, "the scope of the statute is narrowed by the requirement of *scienter*." *Dann*, 652 F. 3d at 1170 (citing *United States v. Calimlim*, 538 F. 3d 706, 711-12) (7th Cir. 2008). "The jury must find that the employer intended to cause the victim to believe that she would suffer serious harm – from the vantage point of the victim – if she did not continue to work." *Id*. Therefore, "[t]he linchpin of the serious harm analysis under § 1595 is

---

[4] An example of the types of cases which are legitimately brought under these statutes demonstrates that Plaintiff's use of, and reliance on, the statutes is clearly erroneous and misplaced. See *United States v. Bradley*, 390 F. 3d 145, 148-49 (1st Cir. 2004) (Seasonal workers from Jamaica were convinced to come work in the U.S. at a New Hampshire tree removal company under the promise of free lodging and $15-20/hour. Once they arrived, they were paid $7/hour instead and charged $50/week in rent. When one of the workers tried to leave the defendants threatened to "kick his ass" and call immigration services and when another left the defendant threatened to "take his gun and go to New York to look for [him]." The men were frequently physically and psychologically berated.); *Dann*, 652 F.3d at 1160, 1171-73 ("Defendant arranged to bring an immigrant nanny into the country to take care of her children. However, she treated the nanny like a slave, taking her visa from her and taking steps to ensure that the nanny would not leave," including: financial harm (claim that nanny owed her $8,000 when she tried to leave); reputational harm (would call her a thief and tell her family back in Peru that she was untrustworthy if she left); immigration harm (threat to leave the country); and harm to the children ("what would happen to my children")); *United States v. Kalu*, 791 F.3d 1194, 1197 (10th Cir. 2015) (Defendant Kalu "recruited foreign nationals to come to the United States for specialized nursing employment, required them to work as non-specialized laborers in nursing homes, retained a portion of their wages for personal profit, and threatened them with deportation and financial ruin if they did not comply.").

not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *Id*.

Plaintiff's allegations that Defendants operated a scheme allegedly "caus[ing] Plaintiffs to believe that non-performance of labor would result in serious financial and professional harm" and even "crushing debt" is not an actionable claim under these statutes. (Compl. at ¶ 142, 143). Even under the broadest interpretation of the statutes, they cannot reasonably be construed to include claims of independent contractor interstate truck drivers bringing allegations of unfair compensation under the terms of independent contractor agreements they entered in to. For the reasons stated above, Plaintiff's Federal Forced Labor claim must be dismissed.

### F. Plaintiff's Tennessee Involuntary Labor Servitude Claim, (Cause of Action VII), Fails to State a Claim Upon Which Relief Can Be Granted and is Grossly Inappropriate Here.

Finally, Plaintiff brings his seventh cause of action alleging the application of the Tennessee Involuntary Labor Servitude statute to the proposed and purported Rule 23 class. This statute closely tracks the language of 18 U.S.C. § 1589 and states the following:

> (a) A person commits the offense of involuntary labor servitude who knowingly subjects, or attempts to subject, another person to forced labor or services by:
>
> > (1) Causing or threatening to cause serious bodily harm to the person;
> > (2) Physically restraining or threatening to physically restrain the person;
> > (3) Abusing or threatening to abuse the law or legal process;
> > (4) Knowingly destroying, concealing, removing, confiscating or possessing any factual or purported passport or other immigration document, or any other actual or purported government identification document, of the person;
> > (5) Using blackmail or using or threatening to cause financial harm for the purpose of exercising financial control over the person;
> > (6) Facilitating or controlling the person's access to an addictive controlled substance; or
> > (7) Controlling the person's movements through threats or violence.
>
> T.C.A. § 39-13-307(a)(1)-(7).

13

Like the federal statute, Tennessee's involuntary servitude statute clearly was not meant to include independent contractor interstate truck drivers unhappy with their contracts and compensation. Rather, it was meant to prevent slavery, trafficking, or other human rights crimes where a victim, often an immigrant or illegal alien, is forced to work against their will. As the Tennessee Criminal Court of Appeals stated, "[i]nvoluntary servitude is defined as the condition of a person who is compelled by force, coercion or imprisonment and against the person's will to labor for another, whether paid or not." *State v. Combs*, No. LA CV10-01172 JAK (MLGx), 2002 Tenn. Crim. App. LEXIS 799, at *188 (Tenn. Crim. App. Sept. 25, 2002) (internal quotations omitted). Going further, that court found that "[i]nvoluntary servitude [was] not a distinct offence, but one of two elements describing a condition of confinement which must be proved to convict a person of kidnapping." *Id*. at *188-89.

Plaintiff claims that, through alleged schemes and/or threats of serious financial and professional harm, Defendants "caused Plaintiffs to engaged in involuntary labor servitude." (Compl. at ¶ 149). Tennessee's involuntary labor statute was not intended for the types of claims that Plaintiff alleges, which is supported by the fact that the statute has never been interpreted in the context of an independent contractor contract and business relationship. Finally, no reasonable independent contractor working as a driver in this matter could interpret the lease agreement and/or the separate independent contractor contract as akin to involuntary servitude. The drivers were free to leave their independent contractor positions and did so without suffering drastic consequences alleged generally by Plaintiff. In that regard, Plaintiff alleges no facts specific to him in the Complaint which establish any adverse consequences associated with the termination of his independent contractor relationship with Western. The Complaint merely states that Plaintiff was employed at Western, left, and came back to perform services as an independent contractor for

14

Western in February 2016. Plaintiff's independent contractor contract and business relationship with Western were terminated in February 2017. Plaintiff offers no specific allegations or alleged facts indicating that he was subjected to, or suffered, any dire adverse consequences as a result of that termination which would have forced Plaintiff to remain as an independent contractor with Western against his will. This silence speaks volumes. Plaintiff's bare-bone resuscitation of the elements which he believes support this claim fall well below the standard required to plead an allegation for Involuntary Labor Servitude. For these reasons, this claim is without merit and should be dismissed with prejudice.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's second through seventh causes of action, Rule 23 Claims 1 through 6, against Defendants should be dismissed. Plaintiff's Rule 23 Claims fail because they either are not pled with sufficient particularity and certainty as required under applicable law, and/or they fail to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 12(b)(6). Accordingly, Western and New Horizons respectfully request that this Honorable Court grant their Partial Motion to Dismiss Plaintiff's Rule 23 Claims, the second through seventh causes of action in the Complaint, with prejudice.

Respectfully submitted,

By:
*s/ Mark E. Hunt*_____
R. Eddie Wayland (No. 6045)
Mark E. Hunt (No. 10501)
Benjamin P. Lemly (No. 35225)
KING & BALLOW
315 Union Street
Suite 1100
Nashville, TN 37201
(615) 726-5430
rew@kingballow.com

15

mhunt@kingballow.com
blemly@kingballow.com

*Attorneys for Western Express, Inc.
and New Horizons Leasing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was electronically filed with the Court and electronically served on date reflected in the ECF system upon:

Mike Sweeney
Lesley Tse
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Phone: (845) 255-9370

Justin L. Swidler
SWARTZ SWIDLER LLC
1101 Kings Hwy N.
Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

Charles Yezbak
Yezbak Law Offices
2002 Richard Jones Road
Suite B-200
Nashville, TN 37215

By: *s/ Benjamin P. Lemly*
Benjamin P. Lemly