IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

| | | |
|---|---|---|
| JOHN ELMY, individually and on behalf of all other similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No.: 3:17-cv-01199 |
| v. | ) ) | Judge Campbell Magistrate Judge Frensley |
| | ) | |
| WESTERN EXPRESS, INC., NEW HORIZONS LEASING, INC., and JOHN DOES 1-5, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

_____

### NEW HORIZONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COLLECTIVE & CLASS ACTION COMPLAINT

_____

Defendant New Horizons Leasing, Inc. ("New Horizons"), by its undersigned counsel, hereby submit this Memorandum of Law in Support of its Partial Motion to Dismiss ("Motion to Dismiss" or "Motion") Plaintiff's Amended Collective and Class Action Complaint ("Amended Complaint"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's federal forced labor, unenforceable contract, unjust enrichment, FLSA misclassification, Truth-in-Leasing Act ("TILA"), and breach of contract claims should be dismissed from Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

On August 25, 2017, Plaintiff Elmy filed his Collective and Class Action Complaint based upon Western and New Horizons' alleged violations of the Fair Labor Standards Act ("FLSA").

1

(D.E. 1). Defendants responded by filing a Motion to Compel the case to arbitration and stay or dismiss the case on October 16, 2017. (D.E. 24). This issue was fully briefed by the parties. Before this Court issued a decision on Defendants' Motion to Compel Arbitration, the Supreme Court of the United States granted certiorari in *New Prime Inc. v. Oliveira,* a case involving similar causes of actions and fact patterns to those in the instant matter. *See* No. 17-340, 2018 U.S. LEXIS 1402, at *1 (Feb. 28, 2018).

In order to avoid potentially duplicative and conflicting litigation and in the interests of justice, Defendants' filed a supplemental Motion to Stay the case pending the Supreme Court's decision in *New Prime* on March 2, 2018. (D.E. 61). On March 15, 2018, Plaintiff responded by filing his Motion to Conditionally Certify his FLSA collective action claim. (D.E. 63). The following day, March 16, 2018, Plaintiff filed his Response in Opposition to Defendants' Supplemental Motion to Stay pending the *New Prime* decision. (D.E. 65). Before any further motion practice took place, this Court granted Defendants' Motion and Ordered a stay of litigation on April 4, 2018. (D.E. 73).

The case remained stayed until 2019. On January 15, 2019, the Supreme Court issued its decision in *New Prime* and this Court lifted the stay January 22, 2019. (D.E. 119). Litigation resumed immediately. On January 23, 2019, Plaintiff re-filed his Motion to Conditionally Certify his FLSA collective action claim. (D.E. 120). Defendants' filed a Partial Motion to Dismiss Plaintiff's Complaint on February 5, 2019 (D.E. 127) and filed their Response in Opposition to Plaintiff's Motion to Conditionally Certify the following day. (D.E. 133). Plaintiff responded in opposition to Defendants' Partial Motion to Dismiss on February 26, 2019 (D.E. 144), but also filed a Motion requesting Leave to Amend their Complaint that same day. (D.E. 140). Defendants objected to such a request (D.E. 153, 160) and the issue was fully briefed for the Court. On April

2

12, 2019, this Court granted Plaintiff's Motion for Leave to Amend (D.E. 161) and Plaintiff's Amended Complaint was filed the same day. (D.E. 162).

Plaintiff's Amended Complaint seeks to bring a collective action, pursuant to 29 U.S.C. § 201, *et seq.* for "Defendants' failure to pay Plaintiffs minimum wages through misclassification of Plaintiff lease operators as 'independent contractors' when by law they are employees." (D.E. 162, ¶ 6). Additionally, Plaintiff seeks to bring a putative Rule 23 class action on behalf of a nationwide Class "under Tennessee common law for fraud and negligent misrepresentation, breach of contract, contract unconscionability,,[sic] and unjust enrichment, under the Federal Forced Labor statute, 18 U.S.C. §§ 1589 and 1595, and under the Truth in Leasing Act, 29 U.S.C. § 14704." (D.E. 162, ¶ 23). Several of Plaintiff's proposed Rule 23 Claims warrant dismissal and are the subject of this Memorandum of Law and corresponding Motion. For the reasons stated below, Plaintiff's federal forced labor, Tennessee common law unenforceable contract; Tennessee common law unjust enrichment; FLSA misclassification; TILA; and breach of contract claims should be dismissed with prejudice.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) serves as a defense to pleadings that "fail[] to state a claim upon which relief may be granted." Indeed, "[t]he purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 291 (6th Cir. 2015) (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The Court, in considering a Rule 12(b)(6) motion, "must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party." *Sutton v. Cmty. Health Sys.*, No. 1:16-cv-01318-STA-egb, 2017 U.S. Dist. LEXIS 133712, at *4-

3

5 (W.D. Tenn. Aug. 22, 2017) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true . . . unwarranted factual inferences." *Ruffin v. Nicely*, 183 F. App'x 505, 510 (6th Cir. 2006) (quoting *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 608 (6th Cir. 2005) (citation omitted)).

While Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim," a "plaintiff must allege sufficient facts to show that the claim is 'plausible.'" *Davis v. Hill*, No. 3:15-cv-00936, 2017 U.S. Dist. LEXIS 40419, at *5 (M.D. Tenn. Feb. 21, 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In order for a complaint to pass the plausibility requirement, it requires "direct or inferential allegations respecting all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). This amounts to more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555; *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). If a plaintiff's complaint is unable to "raise a right to relief above the speculative level," then it will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III. LEGAL ANALYSIS

### A. Plaintiff's Federal Forced Labor Claim Fails to State a Claim Upon Which Relief Can Be Granted and Is Grossly Inappropriate Here.

Plaintiff's Federal Forced Labor cause of action alleges that New Horizons "obtained the continuous labor of Plaintiffs by using threats of serious financial and professional harm." (D.E. 162, ¶ 172). According to the Amended Complaint, Defendants specifically "threatened . . . [to] use the legal system, debt collection system, and DAC Reports to enforce the crushing debt," which "caused Plaintiffs to engage in forced labor . . . in violation of the federal forced labor statutes, 18 U.S.C. §§ 1589 and 1595." (D.E. 162, ¶¶ 174, 175). As a threshold matter, Plaintiff and the other

4

purported class members, did not perform any services or labor for New Horizons. Instead, Plaintiff—and members of the putative class—merely entered into an Equipment Lease ("Lease") with New Horizons, which obligated him to make rental payments to New Horizons in relation to the truck he leased. Neither Plaintiff nor any of the alleged class members provided services or worked for, entered into service as an employee or independent contract with, or were in any form employed or retained by New Horizons. The simple fact that Plaintiff did not perform any services, forced or otherwise, for New Horizons is, on its own, enough of a basis to dismiss Plaintiff's forced labor claim as to New Horizons.

Moreover, 18 U.S.C. § 1589 provides that it is a violation of the statute to:

"knowingly provide[] or obtain[] the labor or services of a person by any one of, or any combination of, the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint ….

18 U.S.C. § 1589(a).

The other statute alleged by Plaintiff in his Amended Complaint in support of this claim, 18 U.S.C. § 1595, provides that "[a]n individual who is a victim of a violation of this chapter [18 USCS §§ 1581 et seq.] may bring a civil action against the perpetrator." 18 U.S.C. § 1595(a). The chapter referenced by § 1595, 18 USCS §§ 1581 *et seq.*, refers to peonage (§ 1581); vessels for slave trade (§ 1582); enticement into slavery (§ 1583); sale into involuntary servitude (§ 1584), among other statutes specifically dealing with slavery. In fact, 18 U.S.C. § 1595 is commonly referred to as the Trafficking Victims Protection Act, or TVPA.

5

Plaintiff's Federal Forced Labor claim alleges that the harm which "force[d] Plaintiffs to labor for [Defendants] for long periods of time" was strictly financial in nature. (D.E. 162, ¶ 101). Financial harm alone is sufficient to bring a claim under 18 U.S.C. § 1589(c)(2), but that potential of financial harm must still satisfy the "serious harm" standard prescribed under the statute. See *United States v. Callahan*, 801 F.3d 606, 617-18 (6th Cir. 2015); *see also* 18 U.S.C. § 1589(a)(2). According to 18 U.S.C. § 1589(c)(2), "serious harm" is defined as "any harm . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or service in order to avoid incurring that harm."

Despite the fact that serious financial harm is, on its own, sufficient for a claim to be brought under 18 U.S.C. § 1589(c)(2), the majority of cases brought under this statute deal with financial harm as *part of* the basis for a Federal Forced Labor claim. For example, in *United States v. Dann*, the plaintiff there alleged that she was forced to remain because she was made to believe that if she left:

> (i) [] she would not be paid back wages for close to two years of work and in fact would owe [defendant] $8,000 for expenses already paid; (ii) that [defendant] would falsely accuse her of wrongdoing and cause reputational harm; (iii) that [plaintiff] would suffer immigration consequences because she would either not be able to leave the country at all (since [defendant] had her passport and papers) or she would be send pack to Peru and would not have the opportunity to study in the United States; and (iv) that the children for whom she cared would be taken from their mother.

652 F.3d 1160, 1171-73 (9th Cir. 2011). Indeed, where financial harm is pleaded within a Federal Forced Labor claim, it is almost always brought alongside additional allegations of serious harm or abuse. See, e.g., *Paguirigan v. Prompt Nursing Employment Agency, LLC*, 286 F. Supp. 3d 430, 436 (E.D.N.Y. 2017) (in addition to the $25,000 contract termination fee, plaintiff also alleged that she and other nurses would suffer serious psychological and reputational harm if they did not

6

continue working); *Javier v. Beck*, No. 13cv2926, 2014 U.S. Dist. LEXIS 95594, at *5 (S.D.N.Y. July 3, 2014) (plaintiff's employer threatened to terminate his H-1B application if he did not continue working in addition to his $15,000 confession of judgement); *Nunag-Tanedo v. East Baton Rouge Parrish School Bd.*, 790 F. Supp. 2d 1134, 1144 (C.D. Cal. 2011) (defendant allegedly threatened deportation, refused to allow teachers to bring their families, and allowed plaintiffs' visas to expire in addition to $5,000 debt); *United States v. Sou*, 2011 U.S. Dist. LEXIS 81876, at *3 (D. Haw. July 26, 2011) (plaintiffs threatened with deportation and destroyed visas in addition to threatening to foreclose on plaintiff's homes).

Where the threat of financial harm is the sole basis for a cause of action under the statute, the financial harm alleged is generally *substantial*. In *Antonatos, M.D. v. Waraich*, the plaintiff doctor making between $185,000 and $200,000 annually survived a motion to dismiss his forced labor claim based on his allegation that he had been threatened with a $250,000 lawsuit if he were to leave. No. 1:12-cv-01905, JMC, 2013 U.S. Dist. LEXIS 121485, at *2 (D.S.C. Aug. 27, 2013). In *Carter v. Paschall Truck Lines*, the independent contractor plaintiff survived a motion to dismiss based on the allegations that the financial harm causing plaintiff to continue working "could be over $100,000.00." 324 F. Supp. 3d 900, 915 (W.D. Ky. 2018).

In contrast, Plaintiff here offers no direct evidence of any serious financial harm he supposedly suffered. Instead, Plaintiff's Amended Complaint broadly states that "[u]pon a 'default' Defendants **may** repossess the leased truck, accelerate all remaining lease payments, thereby imposing crushing debt on the lease operator, ruin the lease operator's credit rating, and file a negative entry on the Plaintiff lease operator's 'DAC Report' which is universally used in the trucking industry as a pre-employment screening tool, thereby making in virtually impossible to obtain work as a truck driver again." (D.E. 162, ¶ 101) (emphasis added). In addition, Plaintiff's

7

Amended Complaint makes the broad allegation that, "[s]ince a lease for a new truck *can* cost a Plaintiff over $100,000, Defendants have the unilateral power to subject Plaintiffs to crushing financial consequences . . . ." *Id*. at ¶ 103 (emphasis added). Both of these allegations are patently untrue and Plaintiff merely postulates that these harms *may* occur but does not allege that any such harm actually did occur.

Importantly, throughout Plaintiff's forty-one page Amended Complaint, **_no_** mention is made of **_any_** amount of financial harm suffered, much less any serious financial harm required by the statute. Furthermore, Plaintiff does not allege that his truck was repossessed, his lease payments were accelerated, or that a negative entry was made on his DAC Report. Finally, Plaintiff's claim of forced labor is undercut by the fact that he terminated his Lease with New Horizons after just one year and walked away from that Lease without any retaliatory action by New Horizons.

In order to bring a claim under 18 U.S.C. § 1589(c)(2), the plaintiff must show that he felt compelled "to perform or to continue performing labor or service" in order to avoid that serious harm. The facts are clear, however, that Plaintiff and the putative class performed *no* labor or service for New Horizons; instead, Plaintiff merely entered into a Lease agreement with New Horizons. The Lease did not bind or force Plaintiff to perform or continue performing work nor did it cause him serious harm, as evidenced by Plaintiff's termination of his Lease with no allegations of financial ruin or retribution by New Horizons. This is further bolstered by the fact that Plaintiff's initial Complaint admitted that, prior to signing the Lease, he was specifically told that he could "walk away from the Lease at any time without consequence." (D.E. 1, ¶ 104).

Unsurprisingly, Plaintiff's Amended Complaint omits this prior admission since it would completely undercut his federal forced labor claim. Still, Plaintiff's Amended Complaint remains devoid of any substantive allegation that he was not able to walk away from his Lease agreement.

Based on the facts as pleaded, Plaintiff has failed to allege any harm and has further failed to even show that he performed labor or service for New Horizons as required by law. These failures are fatal to Plaintiff's forced labor claim, invalidate that claim as to any class he purports to represent, and that claim should be dismissed.

### B. Plaintiff's Common Law Unenforceable Contract Cause of Action Is Not Pled with Sufficient Particularity.

Plaintiff alleges that "[New Horizons'] Lease and [Western's] Contract are unenforceable contracts under the Tennessee common law of contracts, as the provisions of the Agreements are unconscionable." (D.E. 162, ¶ 162). Plaintiff's Amended Complaint goes further, stating that the Lease is unconscionable because it is "presented to Plaintiffs on a 'take-it-or-leave-it basis' with no opportunity for Plaintiffs to negotiate any of their terms." *Id.* at ¶ 163. While these allegations are denied, even if they were to be accepted as true for purposes of this Motion, they remain wholly insufficient to support Plaintiff's claim.

As an initial matter, Plaintiff's Amended Complaint makes it clear that his unenforceable contract claim is nothing more than an attempt to disguise an unconscionability cause of action. (See D.E. 162, ¶¶ 162, 164) ("provisions of the Agreements are unconscionable"; "Defendants' unconscionable contracts are void and unenforceable."). In Tennessee, however, "the doctrine of unconscionability is not available to obtain affirmative relief, but is available only as a defense." *Mullin v. SouthEast Bank*, No. 2:18-cv-00046, 2019 U.S. Dist. LEXIS 35994, at *32 (M.D. Tenn. Feb. 4, 2019) (quoting *Wallace v. Nat'l Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 Tenn. App. LEXIS 152, at *8-9 (Tenn. Ct. App. Feb. 23, 1993); *see also Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 U.S. Dist. LEXIS 148298, at *12 (W.D. Tenn. May 18, 2010) ("Tennessee law does not recognize unconscionability as an actionable claim.").

9

For this reason, Plaintiff is not entitled to bring an unconscionability claim against Western and it should be dismissed with prejudice.

Even assuming that Plaintiff could bring an unconscionability claim, which New Horizons strongly denies he can, Plaintiff's claim would still be subject to dismissal for failure to state a claim. Tennessee courts have determined that "[a] contract is unconscionable where the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Taylor v. Butler*, 142 S.W.3d 277, 288 (Tenn. 2004) (internal quotations omitted). "Whether a contract is unconscionable is determined based on the circumstances as they existed at the time the parties executed the contract." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461-62 (Tenn. Ct. App. 2009). Finally, "[t]he determination of whether a contract or a contractual provision is unconscionable is a question of law." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461-62 (Tenn. Ct. App. 2009) (citing *Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004)).

Plaintiff has alleged that New Horizons' Lease is both procedurally and substantively unconscionable. (*See* D.E. 162, Factual Background ¶ B). In order to bring a successful unconscionability claim, Plaintiff must establish both procedural and substantive unconscionability. *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 366 (6th Cir. 2014) (citing *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009)). Tennessee courts have held that:

> Unconscionability can be procedural or substantive or both. Procedural unconscionability is usually some impropriety during the process of forming the contract that deprives a party of a meaningful choice. Substantive unconscionability involves whether the terms of the contract are overly harsh or one-sided.

10

*Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 346 (Tenn. Ct. App. July 29, 2009). Given the relatively minor differences between the two types of unconscionability, however, "Tennessee [courts] have tended to lump the two together." *Sellers v. Macy's Retail Holdings, Inc.*, No. 12-cv-02496-SHL-tmp, 2014 U.S. Dist. LEXIS 85879, at *28 (W.D. Tenn. June 5, 2014) (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001).

In support of his procedural unconscionability argument, Plaintiff merely alleges that the Lease is unconscionable because it is "presented to Plaintiffs on a 'take-it-or-leave-it basis' with no opportunity for Plaintiffs to negotiate any of their terms," (D.E. 161, ¶ 81) which leaves owner operators under the "complete control" of Defendants. (D.E. 161, ¶¶ 67, 78). Plaintiff's Amended Complaint broadly alleges procedural unconscionability, yet fails to present any evidence detailing the differences in the parties' bargaining power. Where a party pleads "procedural unconscionability, the party opposing enforcement of the contract must ultimately present evidence on 'factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, . . . [and] whether the terms were explained to the weaker party.'" *Sellers*, 2014 U.S. Dist. LEXIS 85879, at *29 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 504 (6th Cir. 2004)). Plaintiff fails to allege any of the foregoing factors in his Amended Complaint. As a result, his claim for procedural unconscionability—and thus his entire unconscionability cause of action— fails to state a claim upon which relief may be granted and must be dismissed.

Even assuming, *arguendo*, that Plaintiff has sufficiently pleaded procedural unconscionability, Plaintiff's Amended Complaint fails to adequately plead the substantive unconscionability prong as well. In support of his substantive unconscionability claim, Plaintiff

merely states that the agreements were provided on a "take-it-or-leave-it basis," lease operators were required to sign the agreements "far from their home," the agreements could be terminated "with or without cause," or if found in default, among other things. (*See* D.E. 162, ¶¶ 67, 70, 72, 76).

Plaintiff's argument that the Lease is substantively unconscionable because it was presented to prospective drivers on a "take-it-or-leave-it basis" is not persuasive. As an initial matter, New Horizons does not require a down payment as part of the Lease agreement it enters into with drivers. (D.E. 121-1). For an agreement to be substantively unconscionable, "the inequality of the bargain [must be] so manifest as to shock the judgment of a person of common sense." *Taylor*, 142 S.W.3d at 288. This is an exceedingly high burden that Plaintiff has failed to meet through the allegations in the Amended Complaint.

The crux of Plaintiff's unconscionability argument revolves around alleged unequal bargaining power between New Horizons and the putative class members when these individuals signed Leases with New Horizons. Even if that were true, which New Horizons disputes, "unequal bargaining power alone does not render a contract substantively unconscionable." *Cooper*, 367 F.3d at 504 (citing *Gilmer v. Insterstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Furthermore, "when a party . . . voluntarily agrees to something in an attempt to obtain employment, they are not being 'forced' to do anything . . ." *EEOC v. Frank's Nursery & Crafts*, 966 F. Supp. 500, 504 (E.D. Mich. 1997), rev'd o.g., 177 F.3d 448 (6th Cir. 1999). This same analysis would apply to any individual, such as Plaintiff, who was desirous of entering into a business relationship with a company.

Finally, the Lease contains language and provisions which are both standard and plainly legal for the lease of equipment by an individual. In *Cooper*, the Sixth Circuit reviewed a district

12

court's finding that an arbitration provision was both substantively and procedurally unconscionable. In reversing the district court, the *Cooper* court held that, "[w]hile the district court's compassion for job applicants is laudable, under its approach practically every condition of employment would be an adhesion contract which could not be enforced because it would have been presented to the employee by the employer in a situation of unequal bargaining power on a take it or leave it basis." 367 F.3d at 505 (internal quotations omitted). The same holds true here. To hold otherwise would open the floodgates for litigation on all contracts where an individual, like Plaintiff, enters into a business relationship with a large company, like New Horizons. Because Plaintiff is not entitled under Tennessee law to bring an unconscionability claim, this cause of action should be dismissed with prejudice. Even if Plaintiff was entitled to bring such a claim, which he is not, he cannot show that his Lease was both procedurally and substantively unconscionable, which results in the dismissal of his claim with prejudice.

### C.  Plaintiff's Unjust Enrichment Claim Fails to State a Claim.

Plaintiff also brings a common law unjust enrichment cause of action against New Horizons. In support of his unjust enrichment claim, Plaintiff alleges that "[l]ease operators conferred a benefit on New Horizons by acting as employees," but were misclassified as lease operators so "they could avoid their obligations to lease operators as employees." (D.E. 162, ¶ 98). As a result, Plaintiff argues that it is "inequitable for Defendants to retain the benefits of lease operators' employment without paying them for the value of such employment conferred." *Id*. Plaintiffs seek "restitution of all benefits conferred upon Defendants, including but not limited to, the disgorgement of any unjust profits." *Id*. at ¶ 170.

Plaintiff's unjust enrichment claim fails to state a claim upon which relief may be granted. "Tennessee courts will impose a contractual obligation under an unjust enrichment theory *where*

13

*there is no contract between the parties* or a contract has become unenforceable." *Stiers v. State Farm Ins.*, No. 3-11-CV-437, 2012 U.S. Dist. LEXIS 87591, at *18 (E.D. Tenn. June 25, 2012) (emphasis added). However, a "Plaintiff cannot recover under an unjust enrichment theory if a valid contract existed, since a contract may not be implied where a valid contract exists on the same subject matter." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005); *see Jaffe v. Bolton*, 817 S.W. 2d 19, 26 (Tenn. Ct. App. 1991) ("The primary purpose of implied contracts is to impose an obligation that ought to be done as a matter of justice and equity in the absence of express contracts. A contract cannot be implied, however, where a valid contract exists on the same subject matter.").

Plaintiff would argue that there is a material dispute as to whether the Lease signed by Plaintiff is invalid, but his actions indicate otherwise. Notably, Plaintiff's Amended Complaint attempts to add a new breach of contract cause of action, which is inconsistent with his claim for unjust enrichment. See *Kattawar v. Logistics & Distrib. Servs.*, No. 14-2701-STA-cgc, 2015 U.S. Dist. LEXIS 14254, at *22-23 (W.D. Tenn. Feb. 6, 2015) ("In other words, a claim of unjust enrichment is inconsistent with a claim for breach of an express contract."). This is because a contract cannot be implied where one already exists. See *Daily v. Gusto Records*, 14 Fed. Appx. 579, 587 (6th Cir. 2001). Plaintiff is not entitled to "bypass" the existence of a valid contract and attempt "to recover under the theory of unjust enrichment." *Durkin v. MTown Constr., LLC*, No. W2017-01269-COA-R3-CV, 2018 Tenn. App. LEXIS 128, at *23 (Tenn. Ct. App. Mar. 13, 2018); See *Ridgelake Apts. V. Harpeth Valley Utils. Dist.*, No. M2003-02485-COA-R3-CV, 2005 Tenn. App. LEXIS 210, at *26-28 (Tenn. Ct. App. Apr. 8, 2005) (rejecting an unjust enrichment claim pleaded as an alternative to a breach of contract claim where an agreement existed between the parties); *see also Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994)

(a party cannot "abandon an express contract and seek recovery in quantum meruit or under an implied contract theory.").

Here, a Lease existed between the Plaintiff New Horizons. Plaintiff's addition of a breach of contract cause of action against New Horizons suggests that a valid contract existed between the parties as well. In other words, a contract cannot be both enforceable and unenforceable at the same time based on what allegations Plaintiff needs to make to support his claims. Even assuming, *arguendo*, that Plaintiff and the putative class could be found to have been improperly misclassified as independent contractors, which New Horizons strongly denies, such a finding would not invalidate the underlying written Lease agreement and save Plaintiff's unjust enrichment claim. For these reasons, Plaintiff's unjust enrichment cause of action fails to state a claim upon which relief may be granted against New Horizons and must be dismissed.

In addition to the reasons stated above, Plaintiff's unjust enrichment claim clearly fails to state a claim against New Horizons. "[T]o establish an unjust enrichment claim, one must prove: 1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit' and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 Tenn. App. LEXIS 146, at *9 (Tenn. Ct. App. Mar. 20, 2018) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)) (internal quotations omitted).

In support of his unjust enrichment claim, Plaintiff only offers allegations about his Contract with Western. For example, Plaintiff states that, "[b]y misclassifying Plaintiff lease operators as independent contractors, Defendants obtain a vast competitive advantage over competitor trucking companies that treat their lease operators as employees." (D.E. 162, ¶ 100).

15

According to the Amended Complaint, the effect of this misclassification "drive[s] down trucker wages," and causes Plaintiff and the putative class to "lose wages, incur negative settlements, and suffer other damages." *Id*. at ¶¶ 98-99.

Despite these broad allegations, the fact remains that New Horizons merely leases trucks to the independent contractors. New Horizons has no relationship with the putative class other than its leasing of trucks to operators pursuant to a Lease agreement: it does not pay wages or compensation to the drivers, it does not monitor the loads they drive, it does not enter into independent contractor agreements with them and, on the contrary, receives rental lease payments from those individuals. As a direct result, New Horizons cannot misclassify any individual because the company does not hire or retain them in any capacity. This fact also applies to Plaintiff's allegation that the Lease causes the putative class to lose wages and incur negative settlements because New Horizons does not pay drivers wages or issue settlements to drivers and is therefore not unjustly enriched in any way, as alleged by Plaintiff.

In Tennessee, "the most significant requirement for unjust enrichment is that the enrichment to the defendant be unjust." *Cole*, 2018 Tenn. App. LEXIS 146, at *9 (citing *Freeman Indus., LLC*, 172 S.W.3d at 525). With respect to New Horizons, the Lease agreement Plaintiff signed is not unjust and it does not enrich the company; rather, it is a standard lease agreement between individuals wishing to lease trucks in order to perform a separate job for a different company. Clearly, a separate Contract that individuals entered into with Western, a separate entity from New Horizons, cannot form the basis for an unjust enrichment claim against New Horizons, especially when Plaintiff has not, and cannot, show that New Horizons was unjustly enriched in the slightest. For these reasons, Plaintiff cannot state an unjust enrichment claim against New Horizons and that claim must therefore be dismissed with prejudice.

16

**D. Plaintiff Cannot Show That New Horizons Is Liable Under the FLSA Because New Horizons Did Not Employ or Retain Plaintiff or the Putative Class and Does Not Fall Under the Definition of an Enterprise Pursuant to the FLSA.**

Plaintiff's cause of action alleges that "Defendants failed to pay minimum wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and its implementing regulations." (D.E. 162, ¶ 145). Specifically, Plaintiff alleges that both "Western and New Horizons are enterprises engaged in interstate commerce for purposes of the Fair Labor Standards Act" and that both entities "have common control and a common business purpose and are operated as a single enterprise, within the meaning of 29 U.S.C. § 203(r)(1)." *Id.* at ¶¶ 45, 46.

As an initial matter, Plaintiff did not receive any compensation or payments of any kind or nature from New Horizons and therefore New Horizons should not fall under Plaintiff's claim for failure to pay minimum wages in violation of the FLSA. As mentioned previously, Plaintiff—and members of the putative class—merely entered into a Lease agreement with New Horizons, which obligated him to make rental lease payments to New Horizons in relation to the truck he leased. Neither Plaintiff nor any of the alleged class members provided services or worked for, entered into service as an employee or independent contract with, or were in any form employed or retained by New Horizons.

Nevertheless, Plaintiff attempts to bring New Horizons into his FLSA cause of action through the theory of enterprise under 29 U.S.C. § 203(r)(1). (See D.E. 162, ¶ 46). Pursuant to § 203(r)(1), an "enterprise" means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . ." The concept of enterprise coverage is relatively clear: "related activities conducted by what may be separate business entities are considered as part of the same

17

enterprise if they are joined either through common control or unified operation into a unified business system or economic unit to serve a common business purpose." *Brennan v. Patio Cleaners, Inc.*, 373 F. Supp. 987, 990-91 (S.D. Ohio 1974); *See generally Wirtz v. Columbian Mutual Life Ins. Co.*, 246 F. Supp. 198 (W.D. Tenn. 1965), *aff'd*, 380 F.2d 903 (6th Cir. 1967).

Based on this statute, courts have formulated a three element test that must be satisfied in order to allege enterprise and treat two separate entities as a single enterprise for purposes of an FLSA claim: "(1) related activities; (2) unified operation or common control; and (3) a common business purpose." *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846-47 (8th Cir. 1975); *see also Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973). For the reasons stated below, Plaintiff has failed to adequately allege enterprise status with respect to New Horizons.

First, Plaintiff's Amended Complaint, including the allegations related to enterprise, is held to the pleading standards contemplated by the Supreme Court in both *Bell Atl. Corp v. Twombly* and *Ashcroft v. Iqbal*. These cases set forth the plausibility pleading standard, whereupon a plaintiff seeking redress is "obligat[ed] to provide the grounds of his entitlement to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, a court is not forced to accept "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In support of his enterprise allegation, Plaintiff relies exclusively on the type of conclusory allegations that the Supreme Court sought to avoid. Specifically, Plaintiff attempts to satisfy the first "related activities" element by simply alleging that "Defendant New Horizons is related to Western. It leases trucks to truckers who will drive for Western. It requires truckers who sign Leases to sign Contracts with Western." (D.E. 162, ¶ 37). In addition to denying that New Horizons

18

requires individuals who sign a Lease agreement to also drive for Western, this type of allegation amounts to nothing more than a "threadbare recital[]" of the first element of enterprise status specifically rejected by the court in *Iqbal*. More is required to adequately plead enterprise status and to survive a motion to dismiss.

Next, Plaintiff attempts to satisfy the second "unified operation or common control" element through various allegations that both New Horizons and Western share the same address, operators, and directors. (D.E. 162, ¶¶ 36, 39-40).[1] Again, these allegations amount to little more than a "formulaic recitation of the elements" for enterprise. See *Twombly*, 550 U.S. at 555. These bare bones allegations do not set forth the facts required to establish the necessary connection between New Horizons and Western to adequately plead enterprise status.

Finally, Plaintiff attempts to satisfy the third and final "common business purpose" element for enterprise coverage by alleging that "Defendant New Horizons is related to Western" and "[it] leases trucks to Western lease operators for the purpose of helping Western further its shipping business." (D.E. 162, ¶¶ 37, 38). This is again insufficient.

"The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [an action] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557; quoting Fed. R. Civ. P. 8(a)(2). Indeed, Plaintiff is not permitted to recite the elements of enterprise as the sole proof of his enterprise theory as he has done here. Aside from his conclusory and incorrect allegation that New Horizons operates "for the purpose of helping Western further its shipping business," Plaintiff has done nothing to make even a barebones showing that the separate

---

[1] Specifically, Plaintiff's Amended Complaint states that "New Horizons has an office and place of business at the very same location as Western," (D.E. 162, ¶ 36); "Western and New Horizons are owned and operated by the same people," (D.E. 162, ¶ 39); and "Western and New Horizons have other interlocking and overlapping officers and directors" (D.E. 162, ¶ 40).

entities have a common business purpose and should be treated as a single entity. This failure is telling. If Plaintiff's allegations are found to be sufficient in this context, then every company that leases trucks to contractors of a carrier which furthers that carrier's transportation business would be considered an enterprise in relation to that carrier for purposes of the FLSA. Such allegations will not support a claim of enterprise status and dismissal is warranted.

Even assuming, *arguendo*, that Plaintiff is able to satisfy the first two elements for enterprise coverage under the FLSA—which New Horizons strongly disputes—Plaintiff certainly cannot show that the two entities have a "common business purpose." While neither Western nor New Horizons disputes that some of Western's owner operator lease purchase drivers lease their trucks from New Horizons, this alone is not sufficient to show a common business purpose. Western is a truckload carrier in the business of freight transportation across the continental United States. Conversely, New Horizons is a leasing company in the business of leasing trucks to individuals who wish to haul freight for various carriers, but do not own their own truck. Some overlap may exist between the two entities by virtue of the business each of them is in, but the mere presence of such overlap is not enough. Furthermore, while Western may profit from the independent contractors who haul freight for them and New Horizons may profit from the rental lease payments it receives from the individuals who lease vehicles from the company, the courts within the Sixth Circuit have held that "proof of a profit motive alone does not satisfy the requirement of a common business purpose." *Marshall v. Great Lakes Recreation Co.*, No, 5-70507, 1980 U.S. Dist. LEXIS 11801, at *13 (E.D. Mich. May 5, 1980); See *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967).

As a result, not only has Plaintiff failed to adequately plead enterprise coverage, Plaintiff also has not and cannot show that the two entities operate under a common business purpose

sufficient to consider them a single entity for purposes of his FLSA claim. For these reasons, Plaintiff's FLSA cause of action against New Horizons must be dismissed.

### E. Plaintiff's Truth-in-Leasing Act ("TILA") Claim is Both Barred by the Applicable Statute of Limitations and Also Fails to State a Claim Upon Which Relief Can Be Granted.

#### i. Plaintiff's TILA Claim is Subject to a 2-year Statute of Limitations and that Statute of Limitations Period Has Lapsed.

Plaintiff's Amended Complaint attempts to add a lengthy cause of action for alleged violations of the Truth-in-Leasing Act, 49 C.F.R. § 376.12 ("TILA"). Pursuant to 49 U.S.C. § 14704(a)(2), Plaintiff may bring a private right of action for violations of TILA. *Owner-Operator Indep. Drivers Assoc., Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999). District courts across the country, however, have struggled to come to a consensus on whether the statute of limitations for claims brought under TILA is two (2) or four (4) years. See *Fitzpatrick v. Morgan Southern, Inc.*, 261 F. Supp. 2d 978, 984-85 (W.D. Tenn. 2003) (2-year); *Owner-Operators Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, Nos. IP 98-457-C B/S; IP 98-458-C B/S, 2004 U.S. Dist. LEXIS 32645, at *5-10 (S.D. Ind. Dec. 14, 2004) (2-year). *But c.f. Brinker v. Namcheck*, 577 F. Supp. 2d 1052, 1060 (W.D. Wis. 2008) (4-year); *Davis v. Larson Moving & Storage Co.*, 2008 U.S. Dist. LEXIS 87251, at *3-7 (D. Minn. Oct. 27, 2008) (4-year). For the reasons set forth below, the 2-year statute of limitations should apply here.

This confusion over the applicable statute of limitations stems from the enactment of the ICC Termination Act ("ICCTA") in 1995. Prior to this Act, 49 U.S.C. § 11705 and § 11706 provided for a two (2)-year statute of limitations on [TILA] actions brought against motor carriers. *See* § 11706(c)(1) ("A person must file a complaint with the Commission to recover damages under section 11705(b)(2) of this title within 2 years after the claim accrues."). But, as the Western District of Tennessee explained in detail, due to numerous largely technical revisions of the

ICCTA, including the renumbering of several of its provisions, the resulting statute of limitations provision for a TILA claim "reference[s] to the [now] non-existent § 14704*(b)(2)*" instead of § 14704*(a)(2)*. *Fitzpatrick v. Morgan Southern, Inc.*, 261 F. Supp. 2d 978, 984-85 (W.D. Tenn. 2003) (emphasis added). This inadvertent scrivener's error in the text of the statutory provision has led to an outcome not contemplated by Congress because, "in the absence of a specified limitations period, the statute of limitations for a claim under 49 U.S.C. § 14704(a)(2) is four years pursuant to 28 U.S.C. § 1658(a)." *Id*. at 981.

In *Fitzpatrick*, the Western District of Tennessee, after exhaustively reviewing this issue, correctly applied scrivener's error and interpreted Congressional intent to apply a two-year statute of limitations based on a plain language reading of the statute and its legislative history. Importantly, the *Fitzpatrick* court stated that it would not have done so "absent an ***extraordinarily convincing justification***." *Id*. at 982-85 (emphasis added). Specifically, the court there found four reasons that satisfied its "extraordinarily convincing justification" standard necessary to apply scrivener's error and the two-year statute of limitations.

First, Congress specifically stated in the Conference Report "accompanying the passage of § 14705, which prescribes the relevant limitations periods for various actions under § 14704, [that] '[t]his section *preserves relevant statutes of limitations* for bringing court suits by or against carriers and *makes the time limitation uniform for all types of traffic*.'" *Fitzpatrick*, 261 F. Supp. 2d at 983-84 (quoting H.R. Conf. Rep. No. 104-422, at 222 (1995)) (emphasis in original). As noted above, prior to the passage of the ICCTA, the statute of limitations for TILA claims against carriers under the Interstate Commerce Act was two years. *Id*. at 984. The fact that the Conference Report notes an intention to preserve the original two-year statute of limitations weighs strongly in favor of applying scrivener's error here.

22

Second, that same Conference Report states the intention to "make the time limitation uniform for all types of traffic." *Id*. (quoting H.R. Conf. Rep. No. 104-422, at 222 (1995)). As the *Fitzpatrick* court noted, "[t]he ICC Termination Act contains parallel provisions governing rail carriers and pipeline carriers. The relevant provisions governing rail carriers, §§ 11704(b) and (c)(1)," not only have been held to permit private causes of action, but have also applied a two-year statute of limitations in those actions. *Id*. In *Engelhard Corp. v. Springfield Terminal Ry. Co.*, the court directly addressed the applicable statute of limitations, finding that the two-year limitations period found within "[s]ection 11705(c) requires a 'person' seeking damages under section 11704(b) to file a complaint . . . within 2 years after the claim accrues." 193 F.Supp.2d 385, 390 (D. Mass. 2002). Indeed, "[t]he fact that the two-year statute of limitations has been applied to the parallel action for damages against rail carriers supports a finding that the two-year statute of limitations in § 14705(c) applies" to TILA claims brought under § 14704 since Congress clearly stated its intent to make the limitations period uniform for both. *Fitzpatrick*, 261 F. Supp. 2d at 984.

Third, and "adding further credence to the assertion that the statute contains a mistake is the fact that even after the Whitfield Amendment to the bill was adopted by the House of Representatives, in which § 14704(b)(2) was relocated to § 14704(a)(2), the statute of limitations provision in § 14705(c) still included a reference to the non-existent § 14704(b)(2)." *Id*. at 984-95 (citing H.R. 2359 (version dated November 15, 1995)). As the *Fitzpatrick* court put it: "[a]lthough the Court typically presumes that when Congress adopts the amended version of a statute it does so deliberately, the Court can discern no logical reason why subsection (b)(2) became (a)(2) without a concurrent amendment to the limitations provision in § 14705(c), which contained a reference to § 14704(b)(2)." *Id*. at 985. This oversight, in addition to the congressional intent to

23

preserve and keep uniform the two-year statute of limitations as stated in the Conference Report, clearly support a finding of mistake which warrants the application of the two-year statute of limitations.

Fourth, and finally, statements made during the bills introduction highlight the fact that the bill was created hastily and without adequate time to correct potential oversights such as this one. Specifically, one Congressman said the following regarding the bill:

> I need to express my dismay with the process and the haste with which this bill was brought before us. As a member of the Committee on Transportation and Infrastructure, we received a 280-page bill on Thursday night and were asked to review, evaluate, and vote on amendments in 4 days, 4 days to determine how we were going to restructure a body of law that has taken 100 years to develop.

141 Cong. Rec. H. 12248, 12259 (Nov. 14, 1995) (statement of Cong. Nadler).

While all of these factors individually present strong evidence that Congress intended claims brought under 49 U.S.C. § 14704(a)(2) for violations of 49 C.F.R. § 376.12 to be subject to a two-year statute of limitations, taken together they present what can only be described as an "extraordinarily convincing justification" for applying scrivener's error in order to correct the inadvertent mistake. For these reasons, Plaintiff's TILA cause of action should be governed by a two-year statute of limitations.

### ii. Plaintiff's Newly-Added TILA Claim Does Not Relate Back to the Filing of His Initial Complaint and Is Therefore Barred by the Two-Year Statute of Limitations.

Plaintiff signed his Lease with New Horizons in or around February 12, 2016 and he terminated the same Lease in February of 2017. (See Lease Agreement, D.E. 121-1). At the absolute latest, Plaintiff's statute of limitations clock began to run when his Lease was terminated in February of 2017. In March of 2019—over two (2) years after the termination of his Lease—

24

Plaintiff first attempted to assert this additional TILA cause of action, which was after the statute of limitations had lapsed.

Federal Rule of Civil Procedure 15 governs the rules surrounding amended and supplemental pleadings. While Rule 15(a) provides a general timeframe in which a party can amend the complaint to add claims and/or substitute parties, Rule 15(c) "sets forth requirements that determine whether an amendment adding an entirely new defendant [or claim] will relate back to the original date of the filing of the complaint for purposes of the governing statute of limitations." *Dorsey v. Wilkinson*, No. 1:05CV1760, 2006 U.S. Dist. LEXIS 36128, at *24 (N.D. Ohio June 2, 2006) (citing *Alston v. Parker*, 363 F.3d 229, 236 (3d. Cir. 2004)).

With respect to the relation back of claims, FRCP 15(c)(1) provides that an amendment will relate back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back; [or]
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15(c)(1)(A),(B). Essentially, "relation back under Rule 15(c) occurs when the new claim and claims raised in the original petition are tied to a common core of operative facts." *Brown v. Warden, Southeastern Corr. Complex*, No. 1:16-cv-647, 2018 U.S. Dist. LEXIS 78770, at *25 (S.D. Ohio May 10, 2018). Although the relevant statutes governing TILA claims are silent as to whether relation back is permitted, it is only necessary that one of the factors is present. *See Klinger v. Corr. Corp. of Am., Inc.*, 2012 U.S. Dist. LEXIS 175984, at *18 (N.D. Ohio Oct. 23, 2012) ("an amended pleading relates back to the date of the original pleading when either subsection (A), (B), *or* (C)[2] is met.") (emphasis in original).

---

[2] FRCP 15(c)(1)(C) deals exclusively with relation back in order to add and/or substitute parties, and is thus not relevant here.

Plaintiff's proposed TILA claim does not relate back to the filing of his Complaint because it does not arise out of the same conduct, transaction, or occurrence set out in the original pleading. See Fed. R. Civ. P. 15(c)(1)(B). Plaintiff filed his initial complaint on August 25, 2017, which alleged that New Horizons misclassified him as an independent contractor, among various other claims. Plaintiff's Amended Complaint was filed on April 12, 2019, making largely the same allegations that were contained in his initial Complaint, but with the addition of TILA and Breach of Contract causes of action. Importantly, Plaintiff's TILA claim contains allegations that the *content* within his Lease agreement violates the law. Conversely, Plaintiff's initial Complaint dealt exclusively with the general *effects* of the contracts and supposed prior oral representations as follows: (i) the effect of the alleged oral representations is the purported basis for his fraudulent and negligent misrepresentation claims; (ii) the presence, or alleged lack thereof, of his Lease is the purported basis for his unjust enrichment claim; and (iii) the effect of the Lease is the basis for Plaintiff's FLSA and federal forced labor claims. Noticeably absent from his initial Complaint is any allegation that the content of the Lease agreement itself is in violation of the law. Because Plaintiff's proposed TILA claim represents an entirely new cause of action that does not arise out of the same common set of facts in his original complaint, the claim does not relate back and is time barred.

Plaintiff's TILA cause of action is also not saved by any equitable tolling. When equitable tolling is provided for a case or claim, it "does not delay the start of the limitations clock, but rather halts its ticking." *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007). While the Court's April 4, 2019 stay did provide for equitable tolling of the statute of limitations in this case, it did so "[i]n order to alleviate prejudice to the potential opt-in plaintiffs," indicating that only Plaintiff's FLSA claim would be tolled. Plaintiff attempts to bring the TILA claim as another new claim in his

proposed Fed. R. Civ. P. 23 class action, not in his FLSA opt-in collective action. (D.E. 73 at 2-3). Clearly, this claim was not equitably tolled by this Court.

As a result, the absolute latest time that the statute of limitations clock began to tick on Plaintiff's TILA claim was February 2017 upon the termination of his Lease agreement. Plaintiff did not attempt to amend his Complaint to add his TILA cause of action until March 2019, and the Amended Complaint was not filed until April 2019. Even using the latest date of February 2017, Plaintiff's attempt to add his TILA claim comes two years and two months later, which is plainly past the two-year statute of limitations that should be applied here. For these reasons, Plaintiff's TILA cause of action fails and must be dismissed.

### F. Plaintiff's Common Law Breach of Contract Claim Fails to State a Claim Upon Which Relief Can Be Granted.

As indicated above, Tennessee courts have stated that, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Hill Boren, P.C. v. Paty, Rymer and Ulin, P.C.*, No. W2012-00925-COA-R3-CV, 2013 Tenn. App. LEXIS 184, at *19-20 (Tenn. Ct. App. Mar. 13, 2013) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). While Plaintiff and New Horizons entered into a Lease agreement, satisfying the first element of a breach of contract claim, Plaintiff's Amended Complaint fails to delineate how New Horizons breached that Lease and is devoid of any allegations in that regard.

Plaintiff's entire breach of contract claim is focused on his Contract with Western, not his Lease with New Horizons. In fact, the New Horizons' Lease is not mentioned even once in his breach of contract claim. Because Plaintiff does not allege any breach of the Lease by New Horizons, he cannot satisfy the requisite elements necessary to bring a breach of contract claim

against New Horizons. For this reason, Plaintiff's common law breach of contract claim against New Horizons fails and must be dismissed with prejudice.[3]

## IV.    CONCLUSION

Based upon the foregoing, Plaintiff's federal forced labor, unenforceable contract, unjust enrichment, FLSA misclassification, TILA, and breach of contract claims against New Horizons should be dismissed. These claims fail because they fail to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 12(b)(6). Accordingly, New Horizons respectfully requests that this Honorable Court grant their Partial Motion to Dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

By:

*s/ R. Eddie Wayland*
R. Eddie Wayland (No. 6045)
Mark E. Hunt (No. 10501)
Benjamin P. Lemly (No. 35225)
KING & BALLOW
315 Union Street
Suite 1100
Nashville, TN 37201
(615) 726-5430
rew@kingballow.com
mhunt@kingballow.com
blemly@kingballow.com

*Attorneys for New Horizons Leasing, Inc.*

---

[3] Western Express, Inc., it its Memorandum of Law in Support of its Partial Motion to Dismiss at Section E, makes an additional argument requiring the dismissal of Plaintiff's Breach of Contract claim. To the extent necessary, New Horizons supports and adopts that argument even though it applies exclusively to the Contract and not the Lease.

28

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was electronically filed with the Court and electronically served on date reflected in the ECF system upon:

Mike Sweeney
Lesley Tse
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Phone: (845) 255-9370

Justin L. Swidler
SWARTZ SWIDLER LLC
1101 Kings Hwy N.
Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

Charles Yezbak
Yezbak Law Offices
2002 Richard Jones Road
Suite B-200
Nashville, TN 37215

By: *s/ Benjamin P. Lemly*
Benjamin P. Lemly

Case 3:17-cv-01199   Document 173   Filed 05/06/19   Page 29 of 29 PageID #: 1663