IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN ELMY, individually and on behalf of all other similarly situated persons, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | 
| WESTERN EXPRESS, INC., NEW HORIZONS LEASING, INC., and JOHN DOES 1-5, | ) ) ) ) ) |
| Defendants. | ) |

Case No.: 3:17-cv-01199
Judge Campbell
Magistrate Judge Frensley

**WESTERN EXPRESS, INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S
AMENDED COLLECTIVE & CLASS ACTION COMPLAINT**

Defendant Western Express, Inc. ("Western"), by its undersigned counsel, hereby submits this Reply Memorandum in Support of its Partial Motion to Dismiss Plaintiff's Amended Collective & Class Action Complaint ("Motion to Dismiss"), (D.E. 170), and in response to Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motions to Dismiss Plaintiff's Collective & Class Action Complaint ("Response"), (D.E. 202).

First, and as explained more fully in Western's Motion for Leave to File Excess Pages filed contemporaneously herewith, Western takes issue with Plaintiff's filing of a *single* Response to both Western and New Horizons Leasing, Inc.'s ("New Horizons") separate and distinct Partial Motions to Dismiss Plaintiff's Collective & Class Action Complaint. These two partial motions to dismiss were filed by separate business entities and, as a result, should be addressed as such.

1

Plaintiff's attempt to combine and conflate the two separate motions into a single Response creates confusion by requiring both Western and the Court to parse through each argument to determine which Defendant and associated dismissal argument is being addressed, all while permitting Plaintiff to blur the lines between the two defendants at his convenience. Plaintiff's single Response not only prejudices Defendant's consistent and well-supported position that Western and New Horizons are separate business entities, it also injects unnecessary confusion into the briefing process. Western and New Horizons have filed separate and distinct motions, and Plaintiff does a disservice by unilaterally choosing not to respond in kind.

In addition, despite Plaintiff's allegations to the contrary, his Amended Complaint clearly fails to adequately plead facts sufficient to avoid the dismissal of his unconscionability, unjust enrichment, Federal Forced Labor, and breach of contract claims against Western. Plaintiff's Truth-in-Leasing Act ("TILA") claim is subject to a 2-year statute of limitations, which has lapsed, and also fails to state a claim upon which relief can be granted. For these reasons, Western respectfully requests that this Court grant its Motion to Dismiss.

**I. Plaintiff's Common Law Unenforceable Contract Cause of Action Fails to State a Claim.**

Plaintiff's Response contains two primary oppositions to Western's Motion to Dismiss Plaintiff's Common Law Unenforceable Contract claim. First, Plaintiff contends that he is permitted to affirmatively raise a contract unconscionability claim, despite Western's citations and well-articulated authority to the contrary. In support of this contention, Plaintiff relies heavily on *In re Baby*, a 2014 Tennessee Supreme Court decision that dealt with surrogacy contracts and the termination of parental rights. 447 S.W.3d 807 (Tenn. 2014). According to Plaintiff, *In re Baby* holds "that contract defenses can be raised in an independent declaratory judgment action." (D.E. 202 at 4).

Plaintiff reluctantly admits, however, that *In re Baby* does not specifically address whether the doctrine of unconscionability may be affirmatively raised for a contract dispute. (D.E. 202 at 5). Indeed, *In re Baby* is entirely silent on the issue of affirmatively raising unconscionability; instead, the case states only that "Tennessee common law recognizes a number of contractual defenses, including fraud, duress, undue influence, mistake, or incapacity . . . which may be raised in an independent declaratory judgment action." *In re Baby*, 447 S.W.3d at 832. Never-the-less, Plaintiff adopts the unsupportable position that *In re Baby* supersedes "Defendants' [sic] citation to two federal district court decisions . . . [that] relied on a single 26-year old opinion from the Tennessee intermediate appellate court." (D.E. 202 at 5).

Plaintiff attempts to diminish the cases cited by Defendant as nothing more than "two federal district court decisions" relying on a still-standing 26-year-old intermediate appellate court decision. *Id*. This is, at best, disingenuous considering Western cites to a ***2019 decision from this very District*** citing this Tennessee appellate court decision and clearly stating that the "doctrine of unconscionability is not available to obtain affirmative relief, but is available only as a defense." *Mullin v. SouthEast Bank*, No. 2:18-cv-00046, 2019 U.S. Dist. LEXIS 35994, at *32 (M.D. Tenn. Feb. 4, 2019) (Brown, Mag. J), adopted in part by, *Mullin v. Southeast Bank*, No. 2:18-cv-00046, 2019 U.S. Dist. LEXIS 35986 (M.D Tenn. Mar. 6, 2019) (Crenshaw, J.). Contrary to Plaintiff's attempt to diminish this prior appellate court decision, the fact that this Court and others, cited to the 26-year-old decision in *Wallace v. Nat'l Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 Tenn. App. LEXIS 152 (Tenn. Ct. App. Feb. 23, 1993), in support of their holdings is significant. These decisions strongly affirm the precedent that "[t]he doctrine of unconscionability is not available to obtain affirmative relief," is based on long standing and well-settled law in Tennessee. Plaintiff's argument to the contrary is meritless.

Assuming, *arguendo*, that this Court may find that an unconscionability claim may be affirmatively raised, Plaintiff still fails to adequately plead his claim. In support of his claim, Plaintiff offers nothing more than conclusory allegations surrounding how he allegedly chose to review the Contract Hauling Agreement ("Agreement"), where he was when he reviewed the Agreement, and the time he had to review the Agreement. (D.E. 202 at 7). Importantly, Plaintiff's Response—in addition to his Amended Complaint—both fail to allege **any** of the *Sellers'* factors.[1] This failure is telling as to his procedural unconscionability claim. As Plaintiff also admits in his Response, even if the Agreement had been presented to Plaintiff on a take-it-or-leave-it-basis during this alleged review process, which it was not, that alone would not render the Agreement unconscionable. *See Cooper v. MRM Inv. Co.*, 357 F.3d 493, 505 (6th Cir. 2004). Plaintiff's argument that the Agreement is procedurally unconscionable is unavailing.

With respect to his claim of substantive unconscionability, that claim is likewise deficient. Plaintiff focuses on alleged provisions within Western's Agreement that purportedly "prevent[] Plaintiff from working for other trucking companies," "mak[e] Plaintiff starkly dependent on . . . Western in order to survive," and "reserve[] the right to terminate the contracts at any time," which will place a driver in "immediate default" of Western's Agreement. *Id*. According to Plaintiff, requiring drivers to operate a tractor-trailer truck, for up to 14 hours per day, drive across the country, away from home for weeks at a time, in which the driver is not guaranteed to make the

---

[1] In order to allege contract unconscionability, **both procedural and substantive unconscionability must be pled**. As explained in greater detail in Western's Motion to Dismiss, a showing of procedural unconscionability requires "evidence on 'factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, . . . [and] whether the terms were explained to the weaker party.'" *Sellers v. Macy's Retail Holdings, Inc.*, No. 12-cv-02496-SHL-tmp, 2014 U.S. Dist. LEXIS 85879, at *29 (W.D. Tenn. June 5, 2014) (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 504 (6th Cir. 2004)).

4

federal minimum wage allegedly "shocks the judgment of a person of common sense" in a way as to render such Agreements substantively unconscionable. *Id*. at 9. The factors Plaintiff cites—driving tractor trailer trucks, being on duty for up to 14 hours a day (drivers are limited by law to no more than 11 hours driving per day), and being away from home for periods of time—are quite simply part of the requirements of over-the-road truck driving. Plaintiff and other drivers knew this going into the independent contractor relationship. Further, Plaintiff's description of the requirements of the position ignores the fact that a substantial majority of all such independent contractor drivers consistently earn weekly revenue well in excess of what would be required under a true minimum wage calculation, even assuming such a calculation was applicable, which it is not. If Plaintiff was unable to exceed such a minimum threshold, which Western denies, he has only his lack of entrepreneurial spirit, work habits, skill, and business acumen to blame. Plaintiff's characterization also ignores the facts that the independent contractor drivers can set their own availability and hours, and that those independent contractor drivers willing to make themselves more available and to efficiently drive more miles are the ones that stand to make the most revenue. Plaintiff voluntarily sought, and was offered, the opportunity to have his own business as an independent contractor; it was ultimately up to him to make that business a success.

The fact remains, however, that substantive unconscionability requires that "the inequality of the bargain [must be] so manifest as to shock the judgment of a person of common sense." *Taylor v. Butler*, 142 S.W.3d 277, 288 (Tenn. 2004). This is an incredibly difficult burden to meet, and Plaintiff's doomsday sensationalism of the trucking industry generally does nothing to improve his failure to plead facts showing substantive unconscionability in this case. Case law is clear that "unequal bargaining power alone does not render a contract substantively unconscionable." *Cooper*, 367 F.3d at 504. Furthermore, Plaintiff's claims of unconscionability

5

are directly undercut by the fact that he voluntarily entered into an independent contractor relationship with Western to perform services as a truck driver, and he was well aware of the general duties associated with being a truck driver when he signed the Agreement. *See EEOC v. Frank's Nursery & Crafts*, 966 F. Supp. 500, 504 (E.D. Mich. 1997), rev'd o.g., 177 F.3d 448 (6th Cir. 1999) ("when a party . . . voluntarily agrees to something in an attempt to obtain employment, they are not being 'forced' to do anything"). For these reasons, Plaintiff fails to state a claim upon which relief may be granted and his unconscionability cause of action must be dismissed as a result.

## II. Plaintiff Fails to State an Unjust Enrichment Claim Against Western.

As to Plaintiff's unjust enrichment claim, in sum, he asks the Court to: (1) ignore his primary claim that the contract is enforceable, and (2) rule that he can still bring an unjust enrichment claim, even though the non-existence of a contract is a fundamental element of an unjust enrichment claim. This is clearly wrong. Accordingly, for this reason and the well-supported arguments and defenses to the claims raised in Western's initial Memorandum in Support of its Motion, Plaintiff's claim of unjust enrichment fails to state a claim and should be dismissed with prejudice.

## III. Plaintiff's Federal Forced Labor Claim Fails to State a Claim and Is Completely Inapplicable Here.

Plaintiff's Federal Forced Labor ("FFL") claim fails to state a claim upon which relief can be granted against Western. Plaintiff makes several strained arguments in support of his FFL claim, none of which are sufficient to survive Western's Motion to Dismiss.

A predominant portion of Plaintiff's Response focuses on the validity of potential financial harm as a basis for a FFL claim. While Western does not dispute that in certain instances severe financial harm might help form the basis of an FFL claim, here it is clear that this is not such a

6

Case 3:17-cv-01199   Document 211   Filed 07/09/19   Page 6 of 14 PageID #: 1956

case. Further, Western takes significant issue with Plaintiff's claim and mischaracterization of numerous cases "where the only or predominant coercive threat was one of financial harm." (D.E. 202 at 17). Plaintiff's Response incorrectly attempts to characterize the cases he cites[2] as cases where the <u>only or predominant</u> coercive threat was of financial harm. (*See* D.E. 202 at 17-18). As stated more comprehensively in Western's Motion to Dismiss, this is simply not true; rather, each of these cases stands for the proposition that financial harm is *not* generally brought as a standalone claim in support of a FFL cause of action. (D.E. 171 at 12-13). Indeed, where financial harm is used as the sole basis in an FFL cause of action, that harm must be <u>substantial</u>. *See Antonatos, M.D. v. Waraich*, No. 1:12-cv-01905, JMC, 2013 U.S. Dist. LEXIS 121485, at *2 (D.S.C. Aug. 27, 2013) (The plaintiff doctor threatened with a $250,000 lawsuit if he were to leave.); *see also Carter v. Paschall Truck Lines*, 324 F. Supp. 3d 900, 915 (W.D. Ky. 2018) (Plaintiff survived a motion to dismiss based on the allegations that the financial harm causing plaintiff to continue working "could be over $100,000.00.").

Plaintiff's Response states that the plaintiff in *Carter* survived a motion to dismiss because they successfully "pleaded that the penalty provisions in their service contracts and equipment lease satisfied the 'serious harm' requirement of the Forced Labor Statute." (D.E. 202 at 15). Conversely, Plaintiff here makes no such claim, instead going so far as to state that he "is not required to offer **any** [plausible claims] whatsoever in support of his amended complaint to survive a motion to dismiss." *Id*. at 19 (emphasis in original). Nowhere throughout Plaintiff's Amended Complaint or Response does Plaintiff even attempt to plausibly plead **any amount of actual**

---

[2] *United States v. Dann*, 652 F.3d 1160, 1171-73 (9th Cir. 2011); *Paguirigan v. Prompt Nursing Employment Agency, LLC*, 286 F. Supp. 3d 430, 436 (E.D.N.Y. 2017); *Javier v. Beck*, No. 13cv2926, 2014 U.S. Dist. LEXIS 95594, at *5 (S.D.N.Y. July 3, 2014); *Nunag-Tanedo v. East Baton Rouge Parrish School Bd.*, 790 F. Supp. 2d 1134, 1144 (C.D. Cal. 2011); and *United States v. Sou*, 2011 U.S. Dist. LEXIS 81876, at *3 (D. Haw. July 26, 2011).

7

**financial harm** he has suffered, let alone the required *substantial or serious* harm. Instead, Plaintiff is forced to argue that the mere threat of financial harm is sufficient, quite simply, because he admittedly suffered no such financial harm.

In order to allege serious harm or a threat of serious harm sufficient to bring a FFL cause of action, however, "the threat, considered from the vantage point of a reasonable person in the place of the victim, must be sufficiently serious to compel that person to remain." *Dann*, 652 F.3d at 1170 (citing 18 U.S.C. § 1589(c)(2)). Indeed, "[t]he linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall h[im]." *Id*.

According to Plaintiff, the primary "threat" alleged here was being placed in default should Plaintiff fail to make even a single lease payment. **This threat, and any threat of financial harm for that matter, are directly undercut by Plaintiff's own admission in his original complaint that he was told he could "*walk away from the Lease at any time without consequence*."** (D.E. 1, ¶ 104) (emphasis added). If Plaintiff was aware, as he previously claimed in his original complaint, that he would not face financial consequences in the alleged form of a default or "crushing debt" upon the termination of his Agreement or Lease, he cannot now turn around and claim that he felt threatened to continue working for Western and leasing from New Horizons because of financial ruin he knew would not occur.

Not only does Plaintiff undermine his own claim, Plaintiff cites no cases in support of his untenable position that he is ***not* required** to plead "to what extent Defendant made good on its threats after Plaintiff stopped working for Defendant." (D.E. 202, at 19). Plaintiff's position appears to be that his allegations that failure to make a lease payment will result in: (1) default, which results in having his entire lease contract for the truck accelerate; (2) negative entry on the

8

lease operator's DAC report; and (3) merely having a lease payment for a truck that likely exceeded $100,000, is more than enough to constitute threats of serious harm for a FFL claim against not only the leasing company, but also a separate trucking company for which he performed services. *See id*. at 20.

This position is without merit. As stated more fully in Western's Motion to Dismiss, a court is not forced to accept "threadbare recitals of a cause of action's elements," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), and "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983). Here, Plaintiff has not alleged that he suffered any financial harm—in fact, Plaintiff has admitted that he terminated his independent contractor relationship with Western and **does not allege a single fact indicating that he suffered any financial harm as a result of doing so**. In addition, the primary threat of harm alleged by Plaintiff here relates to Plaintiff's lease payments to New Horizons, not Western's Agreement. Accordingly, for the reasons stated above, Plaintiff's Amended Complaint and Response do not sufficiently allege serious harm as required by the statute and his FFL claim must be dismissed.

**IV.** **Plaintiff's Breach of Contract Claim Fails to State a Claim Against Western and Western is Entitled to Judgment as a Matter of Law.**

Plaintiff's Response makes the untenable argument that he is entitled to judgment as a matter of law with respect to his breach of contract claim against Western. Plaintiff's attempt to convert his Response into a Motion for Summary Judgment is without merit, is procedurally improper, and the Court should reject that attempt. Also, and as explained more fully in Western's partial Motion to Dismiss, Plaintiff's contention is unsupported by the plain language of Schedule I to the Agreement, Contractor's Compensation ("Schedule"), which was agreed to by Plaintiff and the alleged class. (*See* D.E. 171-1).

9

Independent contractor drivers are offered loads or trips, that they can accept or reject, and such loads are comprised of transporting a shipment from its **point of origin** to its **point of destination**. Western and the independent contractor drivers know this information, and the applicable miles involved, at the time the load or trip is offered and accepted or rejected. The Schedule to the Agreement states in unambiguous terms that independent contractors are to be paid "on point to point rates," (i.e., the applicable number of miles from origination to destination) and therefore this claim should be dismissed. *Id*.

Instead of a straightforward and accurate reading of the Schedule based on its clear language in the context of the Agreement, Plaintiff attempts to argue a novel and inconsistent interpretation whereby a complicated and messy formula would be required to calculate the drivers' revenue for each load. This interpretation is not only inconsistent with the plain unambiguous language of the Schedule, it is also inconsistent with established practice and the intent of the parties at the time of executing the Agreement. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) ("The central tenant of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern."). Plaintiff's position is also not supported by the undisputed past practice of the parties under the Agreement. This is established by the fact that at no time during Plaintiff's performance of services as an independent contractor driver for Western did he notify Western in writing that he had a dispute with the revenue amounts on his settlement statements, as required by his Agreement. (*See* D.E. 121-1, ¶ 28).[3] No such claims of any prior disputes or complaints by Plaintiff are contained

---

[3] Paragraph 28 of the Agreement states: "In the event a settlement dispute arises, Contractor acknowledges and agrees that if contractor does not object in writing to a specific settlement within fifteen (15) days from the date Carrier issues the settlement, the settlement shall be final. Contractor shall not, make any claim or bring cause of action against Carrier relating to the payments and/or deductions reflected therein."

in his allegations in the Amended Complaint. Based on this express language in the Agreement, Plaintiff not only agreed to the accuracy of the settlement statements when he failed to dispute them, he also arguably breached the Agreement when he included a claim in this case based on a dispute related to the accuracy of the settlement statements.

Even assuming that ambiguities may be construed against the drafter, "[a] strained construction may not be placed on the language to find ambiguity where none exists." *Farmers--Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). This is precisely what Plaintiff asks the Court to do here, by requesting the Court to impose Plaintiffs' artificial and strained construction of the Agreement's and the Schedule's unambiguous language. For this reason, as well as those expressed in Western's partial Motion to Dismiss, Plaintiff's request for judgment as a matter of law here must be denied, and Plaintiff's breach of contract claim should be dismissed with prejudice.

**V.     Plaintiff's TILA Claim Is Barred by the Statute of Limitations.**

Plaintiff's TILA claim should be subject to the two-year statute of limitations, which bars his claim. Western reincorporates all of its arguments set forth in its Motion to Dismiss and Memorandum in Support in that regard. (*See* D.E. 170, 171). Plaintiff's Response supports Western's position by citing to *United States v. Ron Pair Enters.*, which held that scrivener's error should be applied where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." 489 U.S. 235, 242 (1989). As shown more fully in Western's Motion to Dismiss and as discussed by the court in *Fitzpatrick v. Morgan Southern, Inc.*, the intent of the drafters was that the original two-year statute of limitations should apply to claims such as Plaintiff's here, and an interpretation to the contrary would be at odds with that clear intention. 261 F. Supp. 2d 978, 984-86 (W.D. Tenn. 2003); (D.E. 171, at 16-18). Applying

11

a four-year statute based on the obvious errors that occurred during the revision of the statute does, and will continue to, create an inconsistent and absurd result which is clearly at odds with the intentions of the drafters.

Also, Plaintiff's proposed TILA claim does not relate back to the filing of his original complaint because it does not arise out of the same conduct, transaction, or occurrence set out in the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B). Plaintiff filed his initial complaint on August 25, 2017, which alleged that Western misclassified him as an independent contractor, among various other claims. Plaintiff's Amended Complaint makes largely the same allegations that were contained in his initial complaint, but with the addition of TILA and Breach of Contract causes of action. Importantly, Plaintiff's new TILA claim contains allegations that the *content* within his Agreement violates the law. Conversely, Plaintiff's initial complaint dealt exclusively with the general *effects* of the Agreement and supposed prior oral representations by Western. Noticeably absent from his initial complaint is any allegation that the content of the Agreement itself is in violation of the law. Because Plaintiff's proposed TILA claim represents any entirely new cause of action that does not arise out of the same common set of facts in his original complaint, the claim does not relate back and is time barred.

Lastly, to the extent Plaintiff's Response argues that the stay Order entered by this Court on April 4, 2018, (D.E. 73), tolled not only Plaintiff's FLSA cause of action, but also all of Plaintiff's additional causes of action, Western strongly disagrees. That Order was explicit and Plaintiff's Response admits that the Order clearly ordered a stay only with respect to Plaintiff's FLSA cause of action. Indeed, Plaintiff's TILA claim was non-existent at the time of the Court's Order. Any argument to the contrary is inconsistent with that Order, and Plaintiff may not use the

stay to argue that his later-filed TILA claim was tolled in regard to the applicable two-year limitations period.

## VI. Conclusion

Based upon the foregoing, Plaintiff's unconscionability, unjust enrichment, FFL, breach of contract and TILA claims against Western should be dismissed. These claims warrant dismissal because they fail to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 12(b)(6) and/or are barred by the applicable statute of limitations. Accordingly, Western respectfully requests that this Honorable Court grant Western's Partial Motion to Dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

By:
*s/ R. Eddie Wayland*
R. Eddie Wayland (No. 6045)
Mark E. Hunt (No. 10501)
Benjamin P. Lemly (No. 35225)
KING & BALLOW
315 Union Street
Suite 1100
Nashville, TN 37201
(615) 726-5430
rew@kingballow.com
mhunt@kingballow.com
blemly@kingballow.com

*Attorneys for Western Express, Inc.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was electronically filed with the Court and electronically served on date reflected in the ECF system upon:

Mike Sweeney
Lesley Tse
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Phone: (845) 255-9370

Justin L. Swidler
SWARTZ SWIDLER LLC
1101 Kings Hwy N.
Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

Charles Yezbak
Yezbak Law Offices
2002 Richard Jones Road
Suite B-200
Nashville, TN 37215

By: *s/ Benjamin P. Lemly*
     Benjamin P. Lemly