# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN ELMY, individually and on behalf of all other similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 3:17-cv-01199 |
| v. | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |
| WESTERN EXPRESS, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is the Partial Motion to Dismiss filed by Defendant Western Express, Inc. ("Western" or "Western Express") (Doc. No. 170), and the Partial Motion to Dismiss filed by Defendant New Horizons Leasing, Inc. ("New Horizons") (Doc. No. 172). Plaintiff filed a Response in Opposition (Doc. No. 202) and Defendants filed Replies. (Doc. Nos. 211, 213). For the reasons discussed below, the Defendants' Partial Motions to Dismiss are **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Western is a motor carrier, engaged in interstate shipment of freight. (Doc. No. 162 ¶ 34). Defendant New Horizons leases trucks to truckers who will drive for Western. (*Id.* ¶ 37). On February 12, 2016, Plaintiff entered into an Equipment Lease with New Horizons and a Contract Hauling Agreement with Western Express. (*Id.* ¶ 130). The present lawsuit arises from Plaintiff's work as a long-haul truck driver for Defendants.

On April 12, 2019, Plaintiff filed an Amended Collective & Class Complaint ("Amended Complaint") against Defendants alleging numerous causes of action, specifically Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Tennessee common law fraud, Tennessee

common law negligent misrepresentation, Tennessee common law unenforceable contract, Tennessee common law unjust enrichment, Federal Forced Labor, 18 U.S.C. §§ 1589 and 1595, Truth-in-Leasing Act, 49 U.S.C. § 14704, and breach of contract. (Doc. No. 162).

On May 6, 2019, Western Express moved to dismiss Plaintiff's Federal Forced Labor, Tennessee common law unenforceable contract, Tennessee common law unjust enrichment, Truth-in-Leasing Act, and breach of contract causes of action for failure to state a claim upon which relief can be granted. (Doc. No. 170). Also on May 6, 2019, New Horizons moved to dismiss Plaintiff's Federal Forced Labor, Tennessee common law unenforceable contract, Tennessee common law unjust enrichment, FLSA misclassification, Truth-in-Leasing Act, and breach of contract causes of action for failure to state a claim upon which relief can be granted. (Doc. No. 172).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6), permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

## III. ANALYSIS

### A. FLSA Misclassification

The FLSA "was enacted by Congress to be a broadly remedial and humanitarian statute. The Act was designed to correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers ..." *Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 845 (6th Cir. 2019) (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (internal quotations omitted)). As such, the FLSA "must not be interpreted or applied in a narrow, grudging manner." *Id.* (citing *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944), superseded by statute on other grounds, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–262)).

New Horizons argues that Plaintiff's FSLA claim against it must be dismissed because the Amended Complaint fails to adequately allege enterprise status with respect to New Horizons. (Doc. No. 173 at 18). Under 29 U.S.C. § 203(r)(1), an "enterprise" means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . .". Accordingly, for enterprise liability to attach to New Horizons, the Plaintiff will ultimately have to prove the following three elements with respect to the interrelationship between Western Express and New Horizons: (1) related activities; (2) performed through unified operations or common control; (3)

3

for a common business purpose." *See Marshall v. Shan-An-Dan, Inc.*, 747 F.2d 1084, 1085 (6th Cir. 1984).

"[A]ctivities are 'related' when they are the same or similar...." *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973) (quoting S. REP. NO. 145–87, at 41 (1961)). "Unified operation" combines, unites, and organizes "related activities" in a way that creates a "single business unit or an organized business system...." 29 C.F.R. § 779.217. "Common control" means the "related activities" are "controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. § 779.221. A "common business purpose" is present when activities "are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213.

New Horizons generally asserts that the Amended Complaint pleads nothing more than threadbare recitals of the elements of the integrated enterprise. (Doc. No. 173 at 18-20). In Response, Plaintiff argues the Amended Complaint adequately pleads that New Horizons operated a single enterprise under the FLSA with Defendant Western Express. Plaintiff contends the allegations demonstrate the common business purpose and objective whereby Western Express and New Horizons jointly provided an integrated set of Agreements in order to get drivers into New Horizons trucks and delivering Western Express freight for Western Express customers. Specifically, Plaintiff points to the allegations that the Agreements were presented jointly, drivers had to sign both the Lease and the Contract, drivers could only drive the New Horizons trucks for Western Express, the Vehicle Lease required drivers authorize Western to deduct and pay New Horizons out of the drivers' pay, drivers automatically default on the vehicle lease if their Western contract terminates, and that Western and New Horizons jointly ensure the vehicle is being maintained. (Doc. No. 202 at 31 (citing Amended Complaint, Doc. No. 162 ¶¶ 66, 68, 71, 75-76,

88)). Plaintiff argues the foregoing allegations, well-pleaded and accepted as true, demonstrate the "related activities" that formed a single organized business system. (Doc. No. 202 at 31 (citing 29 C.F.R. § 779.217)).

Additionally, Plaintiff points to the allegations that Western and New Horizons both work out of the same office; that New Horizons is essentially a partner-company of Western Express with a primary purpose of leasing trucks to truckers who will drive for Western, going so far as to require these truckers to sign Contracts to drive for Western; that New Horizons' purpose in exclusively leasing trucks to drivers who will drive for Western is to further Western's shipping business for their mutual and common gain; and that New Horizons and Western Express are both owned and operated by the same management and ownership team. (Doc. No. 202 at 31 (citing Amended Complaint, Doc. No. 162 ¶¶ 33, 35-39)). Plaintiff argues the "common business purpose" New Horizons shares with Western is sufficiently pleaded insofar as Plaintiff has pleaded that New Horizons' "only business purpose" is to provide the dedicated truck fleet for Western's lease operator business line. (Doc. No. 202 at 32).

The Court finds that the foregoing facts alleged, taken as true and drawing all reasonable inferences in favor of Plaintiff, adequately allege New Horizons was an enterprise with Western Express within the meaning of § 203(r) of the Act. Accordingly, New Horizons' motion to dismiss Plaintiff's FLSA claims against it is **DENIED**.

## B. Tennessee Common Law Unenforceable Contract

Defendants contend that Plaintiff's unconscionability claim should be dismissed for two reasons: (1) because unconscionability is not available to obtain affirmative relief, and (2) because Plaintiff fails to adequately plead both procedural and substantive unconscionability. (Doc. No. 171 at 4-8; Doc. No. 173 at 9-13).

1. Ability to Bring and Unconscionability Claim Seeking Solely Declaratory Relief

First, Defendants argue that Plaintiff is not entitled to an unconscionability claim against them because "the doctrine of unconscionability is not available to obtain affirmative relief, but is available only as a defense." (Doc. No. 171 at 5 and Doc. No. 173 at 9 (citing *Mullin v. SouthEast Bank*, No. 2:18-CV-00046, 2019 WL 2482162, at *11 (M.D. Tenn. Feb. 4, 2019)[1] and *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 WL 11493119, at *5 (W.D. Tenn. May 18, 2010)).[2]

In Response, Plaintiff argues Tennessee law permits him to seek declaratory relief to find the contracts at issue are void for unconscionability. (Doc. No. 202 at 6-7). In support, Plaintiff argues that the Tennessee Declaratory Relief Act and *In re Baby*, 447 S.W.3d 807, 832–33 (Tenn. 2014) (holding that contract defenses can be raised in an independent declaratory judgment action) permit defenses to contract enforceability to be raised affirmatively. Plaintiff notes that *In re Baby*

---

[1] This opinion, a Report and Recommendation from a magistrate judge, was later rejected in part on other grounds by the district judge in *Mullin v. Southeast Bank*, 2019 WL 1055762 (M.D. Tenn. Mar. 6, 2019).

[2] Both *Mullin* and *Greer* rely exclusively on *Wallace v. Nat'l Commerce Bancorporation*, No. 02A01-9205-CV-00143, 1993 WL 44600, at *3 (Tenn. Ct. App. Feb. 23, 1993), where the entirety of the court's analysis on the issue was the following:

> As to the unconscionability claim, we agree with the trial court that this is a defense to enforcement of a contract. Although we have been unable to find any Tennessee cases directly on point, we agree with the decisions in *Sanders v. Colonial Bank of Alabama*, 551 So.2d 1045 (Ala.1989) and *Cowen Equipment Co. v. General Motors Corp.*, 734 F.2d 1581 (11th Cir.1984), which hold that the doctrine of unconscionability is not available to obtain affirmative relief, but is available only as a defense.

*Id*. The court in *Cowin*, however, addressed the application of the Uniform Commercial Code section concerning unconscionable contracts, U.C.C. § 2–302, and held that provision does not create a cause of action *for damages*. 734 F.2d 1581, 1582-83 (11th Cir. 1984) ("The language of § 2–302 and the Official Comment which follows it make no mention of damages as an available remedy for an unconscionable contract.") (emphasis added). *Sanders*, relying on *Cowin*, also only "concerned the application of the Uniform Commercial Code unconscionability provision, adopted in Alabama as Ala.Code 1975, § 7–2–302." *Williams v. E.F. Hutton Mortgage Corp.*, 555 So. 2d 158, 161 (Ala.1989).

did not specifically address unconscionability, but argues there is no basis for concluding that unconscionability stands on different grounds than the defenses of duress, undue influence or incapacity which the Tennessee Supreme Court has held could be raised through an action seeking declaratory judgment. (Doc. No 202 at 7).

The Court finds Plaintiff's argument more persuasive. While Defendants are correct that the doctrine of unconscionability is not available for the affirmative recovery of money damages, Plaintiff's unconscionability claim in the present case does not seek such relief. Rather, Plaintiff seeks only declaratory relief. None of the cases relied upon by Defendants dealt with a cause of action for unconscionability where the plaintiff sought declaratory relief. Moreover, "[a]s a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action, so long as there is an actual controversy between the parties." *Eva v. Midwest Nat'l Mortg. Banc, Inc.*, 143 F. Supp. 2d 862, 895 (N.D. Ohio 2001) (plaintiffs not precluded from asserting a claim for declaratory relief on a theory of unconscionability); *see, e.g.*, *Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008) ("If Doe were seeking a declaratory judgment or reformation of the contract, unconscionability could form the basis of a cause of action."). Because Plaintiff's unconscionability claim seeks only declaratory relief, the Court finds that Plaintiff may assert unconscionability as an affirmative claim in the present case.

2. <u>Whether Amended Complaint Adequately Alleges Unconscionability</u>

There are two types of unconscionability: procedural and substantive. Procedural unconscionability may arise from a lack of meaningful choice on the part of one party, whereas substantive unconscionability may arise from contract terms that are unreasonably harsh or favorable to the other party. *See Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 818 (Tenn. Ct. App. 2015); *Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 346

(Tenn. Ct. App. 2009). Under Tennessee law, "[u]nconscionability can be procedural or substantive or both." *Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 346 (Tenn. Ct. App. 2009). However, Tennessee courts tend to "lump the two together" and find unconscionability "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001), abrogated on other grounds by *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016), (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)).

When deciding whether a contract is unconscionable, Tennessee courts consider the contract's "setting, purpose, and effect," and analyzes factors such as "weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes [.]" *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 747 (Tenn. 2015) (quoting *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) (quoting Restatement (Second) of Contract § 208, cmt. a (1981))). "Whether a contract is unconscionable is determined based on the circumstances as they existed at the time the parties executed the contract." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009).

Defendants argue the Amended Complaint fails to plead unconscionability with sufficient particularity because the allegations revolve around unequal bargaining power between Defendants and Plaintiffs when they signed the Agreements but fail to plead facts bearing on the relative bargaining position of the contracting parties. (Doc. No. 171 at 7; Doc. No. 173 at 11). Defendants further argue dismissal is appropriate because "unequal bargaining power alone does

not render a contract substantively unconscionable." (Doc. No. 171 at 7-8; Doc. No. 173 at 12-13 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 504 (6th Cir. 2004)).

In response, Plaintiff asserts that the unequal bargaining power is reflected in the form contracts provided to the drivers under coercive circumstances, pointing to the allegations that the Agreements were set forth on an integrated series of pre-printed forms and not subject to negotiation, that Plaintiff was required to sign the Western Contract as a condition of signing the New Horizons Lease, that when Plaintiff was given the Agreements to sign, he was not given hard copies to review, but was instead required to review the Agreements on his cell phone, and that most drivers signing the Agreements did so far from home, with no practical way home, and no time to review their contents. (Doc. No. 202 at 9 (citing Amended Complaint, Doc. No. 162 ¶¶ 66-70)).

Plaintiff further asserts that the unequal bargaining power at the time of signing is just one part of unconscionable Agreements and the actual work relationship the Agreements created, pointing to allegations that the Agreements affirmatively prevented Plaintiff from working for other trucking companies while also failing to guarantee any work to Plaintiff, Western reserved the right to terminate the contracts at any time, with or without cause, and regularly terminated contracts without 10 days' written notice, termination of a driver's contract by Western would place the driver into immediate default on the New Horizons Lease, the driver also defaulted on the New Horizons lease by making a single late payment of the vehicle lease payment or carrying a negative settlement balance for more than 10 days, and that once a driver defaulted, New Horizons would repossess the truck and accelerate all remaining lease payments as liquidated damages. (Doc. No. 202 at 8-9 (citing Amended Complaint, Doc. No. 162 ¶¶ 71-73, 76-77)).

Plaintiff argues the Amended Complaint alleges that Western could at any time take away

the driver's livelihood and immediately subject the driver to tens of thousands of dollars of debt, and that the same consequences which would follow from a default on the New Horizons Lease meant that drivers did not have the same freedom to "quit at will" that Western had to "fire at will"—thereby subverting the sole benefit most employees subject to at-will employment have—the equal freedom to leave. (Doc. No. 202 at 10 (citing Amended Complaint, Doc. No. 162 ¶ 79)).

Plaintiff further argues the unconscionability of the Agreements revolves around the advantage Defendants took from the unequal bargaining power, pointing to the allegations that Defendants made Plaintiff and other lease drivers agree to be independent-contractors-in-name-only, subject to Defendants' total effective control, while requiring them to assume the costs of Defendants' business expenses—including truck payments, fuel payments, taxes, insurance, technology fees, and a variety of other charges incurred for Defendants' benefit. (Doc. No. 202 at 10 (citing Amended Complaint, Doc. No. 162 ¶¶ 88-89, 91)).

As noted by Plaintiff, the Amended Complaint contains numerous detailed factual allegations explaining both the circumstances surrounding the signing of the Agreements and the oppresively one-sided terms contained therein. Taking all of the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds the Amended Complaint states a claim for unconscionability with sufficient particularity. Accordingly, Defendants' motions to dismiss on that ground are **DENIED**.

### C. Tennessee Common Law Unjust Enrichment

Under Tennessee law, "the elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. v. Eastman Chem.*

*Co.,* 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations omitted) (quoting *Paschall's, Inc. v. Dozier,* 407 S.W.2d 150, 155 (1966)).

Defendants argue the Amended Complaint fails to state a claim upon which relief can be granted for unjust enrichment because contracts existed between the parties. (Doc. No. 171 at 10; Doc. No. 173 at 13-15). Additionally, New Horizons argues that Plaintiff's unjust enrichment claim against it should be dismissed because the Amended Complaint fails to show it was unjustly enriched. (Doc. No. 173 at 15-16).

In Response, Plaintiff argues that his unjust enrichment claim against Defendants is pleaded in the alternative to his breach of contract claims and is cognizable if the contract at issue is void. (Doc. No. 202 at 13-14). Plaintiff further argues the Court should reject Defendant New Horizons' argument for dismissing the unjust enrichment claims because Plaintiff has pleaded that the work performed by lease operators for Western Express conferred a benefit on New Horizons in the form of truck lease payments pursuant to its arrangement with Western Express whereby the two companies acted in concert with each other to enlist drivers to perform work for Western Express and then remitted the drivers' wages to New Horizons under the terms of the Agreements. (Doc. No. 202 at 15 (citing Amended Complaint, Doc. No. 162, at ¶¶ 34-40, ¶ 46 (interlocking management, control, and facilities of Western and New Horizons); ¶¶ 66-68 (drivers were required to sign both the Western Express and the New Horizons agreements at the same time); ¶ 75 (New Horizons' vehicle lease required the driver to sign a hauling agreement with Western, and providing that Western would divert the drivers' pay directly to New Horizons to make the vehicle lease payments); ¶ 97 (diversion of driver wages to New Horizons and Western to pay for business expenses causes drivers to make less than federal minimum wage for all hours worked)). Additionally, Plaintiff points to allegations that the financial benefits obtained were also gained

through an unjust arrangement whereby Western Express and New Horizons coordinated to pay themselves for the drivers' work before and instead of paying the driver. (Doc. No. 202 at 15 (citing Amended Complaint, Doc. No. 162, at ¶¶ 75, 97)).

The Federal Rules of Civil Procedure allow for alternative pleading. *See* Fed. R. Civ. P. 8(a)(3). Here, Plaintiff's unjust-enrichment claim is pleaded in the alternative to his breach-of-contract claim. Additionally, the Court finds it would be premature to dismiss this alternative claim in light of Plaintiff's pending claim for declaratory relief regarding the unconscionability of the contracts. Therefore, at this stage, the Court finds that Plaintiff has properly pleaded alternative claims. With respect to New Horizons, taking all of the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds the Amended Complaint states a plausible claim of unjust enrichment against New Horizons. Accordingly, Defendants' motions to dismiss Plaintiff's claims for unjust enrichment will be **DENIED**.

### D. Federal Forced Labor

The Amended Complaint alleges that Plaintiff was coerced to provide his labor to Defendants under threat of serious financial harm, in violation of the federal forced labor statute, 18 U.S.C. § 1589. New Horizons argues that Plaintiffs' forced labor claims against it should be dismissed because Plaintiff did not perform any services for New Horizons. (Doc. No. 173 at 5). Additionally, New Horizons and Western Express advance the same argument that the Amended Complaint fails to a state a claim under the federal forced labor statute because it fails to allege that Plaintiff suffered any serious harm. (Doc. No. 171 at 14; Doc. No. 173 at 9).

"The federal forced labor statute, 18 U.S.C. § 1589, was enacted as part of the Victims of Trafficking and Violence Prevention Act of 2000 (also known as the Trafficking Victims

Protection Act)." *United States v. Callahan*, 801 F.3d 606, 617 (6th Cir. 2015).[3] The Act provides in relevant part:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).
>
> (b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).
>
> (c) In this section:
>
> > (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

---

[3] Section 1595 provides a civil remedy for violations of the Act. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.").

13

> (2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(a)-(c). As an initial matter, the Court is not persuaded by New Horizons' argument that Section 1589 does not apply to it solely because it did not obtain labor or services from Plaintiff. (Doc. No. 173 at 4-5, 8-9). As Plaintiff correctly points out, subsection (b) of Section 1589 expressly extends liability under the statute to whoever knowingly benefits from participation in a venture which has engaged in forced labor. *See* 18 U.S.C. § 1589(b). Plaintiff argues that the Amended Complaint adequately pleads that New Horizons knowingly participated as a full and equal partner with Western in the alleged scheme to employ the lease-operators, and that "New Horizons was the primary cudgel used to threaten the lease drivers into providing forced labor." (Doc. No. 202 at 23). The Court notes that while New Horizons filed a Reply, it failed to address the argument raised by Plaintiff that subsection (b) of Section 1589 applies to the New Horizon in the present action. (*See* Doc. No. 213 at 8).

Defendants' remaining argument, that the Amended Complaint fails to state a claim because it fails to allege that Plaintiff suffered any harm, is also unpersuasive under the plain language of the statute. "[T]hreats of serious harm" are expressly included as one of the means by which someone obtains the labor or services of a person in violation of the Act. *See* 18 U.S.C. § 1589(a)(2).

Plaintiff argues that he has sufficiently plead a Federal Forced Labor claim because the Amended Complaint alleges that he was credibly threatened with serious economic harm if he stopped working for Defendants such that he was coerced to continue working for Defendant even

14

though he was making both sub-minimum and sub-market wages for his labor. (Doc. No. 202 at 14). Specifically, Plaintiff notes the allegations that the labor arrangements between Plaintiffs and Defendants provide that if a driver stops working for Western Express, does not make even a single lease payment, or in any way breaches any provision of the Lease or Contract, the lease operator will be put in default, have the entire lease contract for the truck accelerate, thereby imposing crushing debt on the driver since "a lease for a new truck can cost a Plaintiff over $100,000." (Doc. No. 202 at 22; *see* Amended Complaint, Doc. No. 162, at ¶¶ 76-77, 80, 101-103, 107)). The Amended Complaint also alleges that Western would file a negative entry in the lease operator's DAC report, thereby compromising the driver's ability to secure another job in the trucking industry. (Doc. No. 162 ¶¶ 101, 103). Plaintiff asserts that the foregoing alleged harms constitute threats of serious harm sufficiently coercive to force workers to continue providing labor. (Doc. No. 202 at 22).

The Court finds that the foregoing facts alleged, taken as true, are sufficient to establish a threat of serious harm under Section 1589(a). *See Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 916 (W.D. Ky. 2018) (finding alleged threat of having to pay balance of lease payments for the remainder of the lease term where the amount of money in question could be over $100,000.00 sufficient to survive motion to dismiss). A factual determination of whether an objectively reasonable person with the same background as Plaintiff and under his same circumstances would have felt compelled to continue performing labor would be premature at this stage of the litigation. Accordingly, Defendants' motions to dismiss Plaintiff's federal forced labor act claims will be **DENIED**.

### E. Truth-in-Leasing Act

Defendants ask the Court to apply the two-year statute of limitations set forth in 49 U.S.C. § 14705(c) to Plaintiff's claims brought under 49 U.S.C. § 14704(a)(2) and dismiss Plaintiff's claims as time barred. (Doc. No. 171 at 14-21; Doc. No. 173 at 21-27). In Response, Plaintiff argues the default four-year statute of limitations in 28 U.S.C. § 1658 applies to his claims because no statute of limitations is set forth for private civil actions to recover damages under Section 14704(a)(2). (Doc. No. 202 at 24-27).

Section 14704(a)(2) provides that: "A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2). Section 14705(c) provides that: "A person must file a complaint with the Board or Secretary, as applicable, to recover damages under section 14704(b) within 2 years after the claim accrues." 49 U.S.C. § 14705(c). 28 U.S.C. § 1658(a) is the "catch-all" statute of limitations enacted by Congress that sets the limitations period at four years for civil actions arising under federal statutes enacted after December 1, 1990 "[e]xcept as otherwise provided by law."

Defendants do not dispute that there is no statute of limitations is set forth for private civil actions to recover damages under Section 14704(a)(2). Nor do they dispute that, on the face of the statute, Section 14705(c) applies only to causes of action brought under Section 14704(b). Instead, Defendants argue that a scrivener's error in 1995 resulted in Section 14705(c) inadvertently referring to Section 14704(b) instead of Section 14704(a)(2), and that the court should correct this mistake by applying the two-year statute of limitations set forth in Section 14705(c) to Plaintiff's claims brought under Section 14704(a)(2).

16

Defendants' argument relies entirely on the analysis and holding in *Fitzpatrick v. Morgan Southern, Inc.*, 261 F. Supp. 2d 978 (W.D. Tenn. 2003), where the court examined the legislative history of the Interstate Commerce Commission Termination Act and concluded that Congress had intended for the two-year statute of limitations in Section 14705(c) to apply to claims under Section 14704(a)(2) but that a drafting error had occurred resulting in the current language of the statute instead. *Fitzpatrick*, 261 F.Supp.2d at 982–87. The court in *Fitzpatrick* did not find the statutory language to be ambiguous or that it produced an absurd result before turning to the legislative history. Rather, the court decided to "modify [the] enacted statutory text" on the basis that the plain language of the statute as written would produce "a result demonstrably at odds with the intentions of its drafters." *Fitzpatrick v. Morgan S., Inc.*, 261 F. Supp. 2d 978, 982 (W.D. Tenn. 2003) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

While Defendants contend there is a lack of consensus among district courts on whether the four-year or two-year statute of limitations applies to claims brought under Section 14704(a)(2),[4] Plaintiff points out that all three U.S. Circuit Courts of Appeal that have addressed the issue have held that the four-year statute of limitations pursuant to 28 U.S.C. § 1658 applies. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, LLC*, 615 F.3d 790, 792 (7th Cir. 2010) (rejecting scrivener's error argument for a two-year statute of limitation on claims brought under Section 14704(a)(2)); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1327 (11th Cir. 2010) (same); *Owner-Operator Indep. Drivers Ass'n, v. United Van Lines, LLC*, 556 F.3d 690, 695 (8th Cir. 2009) (same).

---

[4] *Fitzpatrick* appears to have been the first case to rule on the statute of limitations for a private cause of action brought under Section 14704(a)(2). *See Fitzpatrick*, 261 F. Supp. 2d at 981-82 ("Neither the parties, nor the Court, has located a case discussing the statute of limitations for a § 14704(a)(2) claim for a violation of the Truth–in–Leasing Regulations.").

The Court agrees with the Eighth Circuit that a four-year limitations period for Section 14704(a)(2) damage actions is not "demonstrably at odds" with congressional intent:

> Congress subjected § 14704(a)(2) actions to no explicit statute of limitations. Congress is presumed to know that the general four-year statute would therefore apply. Section 14705(c) explicitly subjected only the administrative claims authorized by § 14704(b) to a two-year statute of limitations. The difference between two years and four years, while significant to many litigants, is not significant enough to demonstrate that one period or the other is demonstrably at odds with Congress's intent in enacting the new cause of action in § 14704(a)(2). "[T]he sine qua non of [this] doctrine ... is that the meaning genuinely intended but inadequately expressed must be absolutely clear; otherwise we might be rewriting the statute rather than correcting a technical mistake." *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 82, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (Scalia, J. dissenting)…

*United Van Lines*, 556 F.3d at 693–94. The Court also notes that Congress has had ample opportunity since 1995 to correct any drafting error in Section 14705(c) but has not done so. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034, 157 L. Ed. 2d 1024 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."). Indeed, Congress amended Section 14704 in 2012 as part of the Moving Ahead for Progress in the 21st Century Act but did not make any amendments to Section 14705. *See* Pub.L. 112-141, Div. C, Title II, § 32922(a), July 6, 2012, 126 Stat. 828. The Court finds this Congressional inaction further suggests no error.

Accordingly, the Court will enforce 49 U.S.C. § 14704(a)(2) and 49 U.S.C. § 14705(c) as written and apply the default four-year statute of limitations under 28 U.S.C. § 1658(a) to Plaintiff's claims brought pursuant to 49 U.S.C. § 14704(a)(2). Defendants' motions to dismiss Plaintiff's claims under 49 U.S.C. § 14704(a)(2) are **DENIED**.

**F. Breach of Contract**

Under Tennessee law, all a plaintiff is required to allege to state a claim for breach of contract is: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *See Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). Western Express does not claim in the instant motion that the Amended Complaint fails to properly allege these elements. Rather, it submits that, the Amended Complaint fails to state a breach of contract claim against it because it disagrees with Plaintiff's alleged interpretation of the Contract's compensation schedule for mileage rates. The schedule states in pertinent part:

> In accordance with paragraph 2 of the Contract hauling Agreement
> … [Plaintiff] shall be paid on point to point rates calculated by Rand McNally Inc. Milemaker
>
> | 0 – 200 Miles | $2.50 per mile |
> |---|---|
> | 201 – 400 miles | $1.15 per mile |
> | 401+ Miles | $0.95 per mile |

(Doc. No. 171-1). The Amended Complaint alleges that Defendants agreed in the Contract hauling Agreement "that Plaintiff Elmy would receive a mileage rate of $2.50/mile for 0-200 miles driven, $1.15 per mile for the 201-400 miles driven, and $0.95 cents per mile for miles driven over 400 miles." (Doc. No. 162 ¶ 117). The Amended Complaint further alleges that Defendants failed to pay Plaintiff the cents per mileage revenue specified in the contract and that Plaintiff suffered damages as a result. (Doc. No. 162 ¶¶ 118, 180, 181). Taking the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds the Amended Complaint states a colorable claim for breach of contract. The Court declines to make a determination as a matter of law on Plaintiff's breach of contract claim at this initial stage of litigation.

New Horizons argues the Amended Complaint fails to state a breach of contract claim against it because it fails to allege any breach of the Lease by New Horizons. (Doc. No. 173 at 27). However, drawing all reasonable inferences in favor of Plaintiff, the Amended Complaint plainly seeks to hold New Horizons jointly liable with Western Express for the alleged breach of the compensation schedule. (*See* Amended Complaint, Doc. No. 162 ¶¶ 117-118, 180-181). Thus, while New Horizons is correct that Plaintiff's breach of contract claim does not allege a breach of the Lease, New Horizons has failed to articulate any argument as to how or why the absence of such an allegation would have any bearing on Plaintiff's breach of contract claim against Defendants for the alleged breach of the compensation schedule.

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's common law breach of contract will be **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE