# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN ELMY, individually and on behalf of all other similarly situated persons, | ) ) ) ) |
| Plaintiffs, | ) ) NO. 3:17-cv-01199 |
| v. | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| WESTERN EXPRESS, INC., et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion to Certify Counts 2, 3, 4, 5, 6, 7, and 8 as Rule 23(b)(3) Class Actions. (Doc. No. 425). Defendants filed a response in opposition (Doc. No. 439), Plaintiffs filed a reply (Doc. No. 454), and Defendants filed a Sur-Reply (Doc. No. 462). Plaintiffs also filed a Motion to Strike Defendants' Expert Report in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification. (Doc. No. 466). Defendants filed a response in opposition (Doc. No. 464), and Plaintiffs filed a reply. (Doc. No. 468). For the reasons discussed below, Plaintiffs' Motion to Certify will be **GRANTED**.

## I. MOTION TO STRIKE

Plaintiffs move to strike the expert report of Robert Crandall in support of Defendants' opposition to Plaintiffs' motion for class certification on the grounds that Defendants failed to disclose Mr. Crandall as a witness or his report in violation of Federal Rule of Civil Procedure 26 and that Mr. Crandall's report does not meet the requirements of Federal Rule of Evidence 702.

Neither the Supreme Court nor the Sixth Circuit have decided whether a district court must undertake a *Daubert* analysis at the class-certification stage when an expert's report is critical to the class certification analysis. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 465-66 (6th Cir. 2020) (citing *Comcast v. Behrend*, 569 U.S. 27, 39-40 (2013) and *In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *3 (6th Cir. Sept. 29, 2014)). Here, the Court does not find Mr. Crandall's report critical to its class certification analysis. As such, the Court declines to consider Plaintiffs' motion to strike before ruling on the pending motion for class certification.

## II. BACKGROUND

The alleged facts underlying this litigation are set forth in detail in this Court's Memorandum Opinion denying the motions to dismiss filed by Defendants Western Express, Inc. ("Western" or "Western Express") and New Horizons Leasing, Inc. ("New Horizons"). *See Elmy v. W. Express, Inc.*, No. 3:17-CV-01199, 2020 WL 1820100 (M.D. Tenn. Apr. 10, 2020). Because the factual allegations are well-known to the parties or otherwise readily accessible, the Court assumes familiarity with them and turns to the standards governing requests for class certification.

## III. APPLICABLE LAW ON CLASS CERTIFICATION

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33-34 (2013). The party seeking class certification bears the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). In the present case, Plaintiffs rely on Rule 23(b)(3), which allows for certification of a Rule 23(a)-compliant class if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

**A. Rule 23(a)**

To be certified, a class must satisfy the prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure: that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

1. <u>Numerosity</u>

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "Generally, the number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1)." *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir. 1997) (joinder of parties impracticable for class with over 1100 members and "[t]o reach this conclusion is to state the obvious")).

Defendants do not appear to contest Plaintiffs' position on numerosity. Given that the class is estimated to exceed 4,000 members (*see* Doc. No. 426 at 15), joinder is impracticable and the requirements of Rule 23(a)(1) are met.

   2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that the class members' claims depend upon a common contention of such a nature that it is capable of class-wide resolution. *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). "Variation in the ancillary details of the class members' cases is insufficient to defeat certification, as long as '[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.'" *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (quoting *Bacon*, 370 F.3d at 570). For the reasons discussed below in the Court's analysis of Rule 23(b)(3)'s predominance requirement, *see* Part III(B)(1), the Court concludes Plaintiffs have met the commonality prerequisite of Rule 23(a)(2). *See Cahoo v. Fast Enterprises LLC*, 508 F. Supp. 3d 138, 160 (E.D. Mich. 2020) (noting that the predominance test is "more demanding" than the commonality determination).

   3. Typicality

"Typicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *Grae*, 330 F.R.D. at 501. "This requirement ensures that the class representative's interests are aligned with the interests of the represented class members so that, by pursuing its own interests, the class representative also advocates the interests of the class members." *Id.* (citing *In re Whirlpool Corp.*, 722 F.3d at 852–53). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims

4

of other class members and if his claims are based on the same legal theory." *Id*. (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). However, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976)).

Plaintiffs assert that the claims of the Named Plaintiffs are typical of the proposed class because they arise from the same factual circumstances – that Defendants induced them to sign substantively identical contracts and leases for the Owner Operator program through the same misrepresentations regarding the amounts they would be compensated. (Doc. No. 426 at 16). Defendants argue that the Named Plaintiffs' claims are not typical of the purported class members because of factual differences; namely that some drivers were paid on a percentage of gross revenue basis whereas the Named Plaintiffs were paid on a per-mile basis and some drivers did not see Defendants' ads. (Doc. No. 439 at 19-20).

"Rule 23's typicality requirement is not an 'identicality' requirement" and "[t]he threshold for satisfying the typicality prong is a low one." *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009). Here, while there may be factual discrepancies, Defendants do not challenge that the Named Plaintiffs and the putative class members raise the same claims arising out of their work under substantially identical leases and contract hauling agreements. The Court concludes Plaintiffs have met the typicality prerequisite of Rule 23(a)(3).

    4. <u>Adequacy of Representation</u>

The adequacy requirement of Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two criteria for determining whether class representatives are adequate, as required for class certification, are

5

(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *See Momenta Pharms., Inc.*, 333 F.R.D. at 405 (citing *Senter*, 532 F.2d at 525).

Plaintiffs assert that the interests of the Named Plaintiffs are not in conflict with the other unnamed class members, and that the Named Plaintiffs possess the same interests and suffer the same injuries as the unnamed class members. (Doc. No. 426 at 17). Plaintiffs also assert that the Named Plaintiffs have demonstrated their willingness and ability to vigorously prosecute the action on behalf of the class, noting that they have provided declarations in support of motions, responded to written discovery, and expressed a willingness to be deposed as representatives of the class. Additionally, Plaintiffs contend that class counsel has demonstrated their ability and commitment to vigorously represent the interests of the class and have substantial experience handling large employment class actions. (Doc. No. 426 at 17).

Defendants do not dispute that the Named Plaintiffs have interests aligned with, rather than antagonistic to, the interests of the unnamed class members. Nor do Defendants challenge the competency of class counsel. Rather, Defendants assert that the Named Plaintiffs are not adequate representatives because they are not typical members of the putative class. (Doc. No. 439 at 21-22 ("Plaintiffs are not typical of the members of the putative class, and therefore, cannot adequately represent the interests of the class.")). Defendants are correct that "[t]ypicality merges somewhat with the first part of the test for adequate representation because 'in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.'" *In re Mut. Sav. Bank Sec. Litig.*, 166 F.R.D. 377, 382 (E.D. Mich. 1996) (quoting *In re American Medical Systems, Inc.*, 75 F.3d at 1083). However, having already found that the typicality prong

is satisfied in the present case, the Court is not persuaded by Defendants' argument and concludes Plaintiffs have met the adequacy prerequisite of Rule 23(a)(4).

**B. Rule 23(b)**

"Rule 23(b)(3) classes ... must meet predominance and superiority requirements, that is, 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). "Moreover, although not explicitly stated in Rule 23 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Lyngaas v. Ag*, 992 F.3d 412, 428 (6th Cir. 2021) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012)).

1. Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459–60 (6th Cir. 2020); *see Young*, 693 F.3d at 544 ("While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will *predominate* over individual ones.") (emphasis in original). "The Supreme Court has emphasized that 'Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)) (emphasis

7

in original). "Common questions are those 'that can be proved through evidence common to the class.'" *Id.* (quoting *In re Whirlpool Corp.*, 722 F.3d at 858).

"The predominance inquiry begins with the elements of the underlying cause of action." *Momenta Pharms., Inc.*, 333 F.R.D. at 406 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). However, Plaintiffs seeking class certification based on predominance do not need to prove that each element of a claim can be established by class-wide proof, rather they need to prove that common questions predominate over questions affecting only individual class members. *See Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 131 (M.D. Tenn. 2020) (citing *Bridging Communities Inc.*, 843 F.3d at 1124).

    a. *Count Two: Fraud About the Owner Operator Program*

Plaintiffs' fraud claim is based on Defendants' allegedly fraudulent inducement of drivers to enter into the Owner Operator program. This claim requires Plaintiffs to show "that the defendant (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance." *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011) (citation omitted).

Plaintiffs argue that common questions predominate with respect to this claim because (1) whether Defendants' statements were false, (2) with knowledge of the statement's falsity or utter disregard for its truth, (3) with the intent of inducing reliance on the statement, and (4) the statement was reasonably relied upon are all issues that can be proved through common class-wide proof. In support, Plaintiffs note that Defendants' knowledge and intent are facts that are common to the class. Plaintiffs contend that Defendants made essentially the same statements to all class members over the class period through a "standardized sales pitch" and produce evidence that

Defendants exposed the class members to generally uniform representations regarding the weekly take home pay Lease Operators could anticipate, the number of miles a Lease Operator would expect to be offered on a weekly basis, and the pay they would receive per mile. (Doc. No. 426-1). They assert that the element of reliance may be presumed class-wide, and thereby obviating the need for an individualized inquiry of each class member's reliance, where, as here, there are uniform presentations of allegedly misleading information through documents. *See Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 945 (M.D. Tenn. 2010); *Stanich v. Travelers Indemnity Co.*, 249 F.R.D. 506, 518 (N.D. Ohio 2008). Additionally, Plaintiffs argue that they can prove their fraud damages on a class wide basis because Defendants' pay records reflect the miles that drivers drove each week and their weekly earnings such that a mathematical computation can be used to determine the difference between what Defendants actually paid drivers and what drivers would have earned at the rates promises by Defendants. (Doc. No. 426 at 24).

In their response, Defendants assert that the issues of (1) which ads were viewed/what representation were made and when and (2) whether a driver acted reasonably in relying on the ads are subject to individualized proof because the ads had substantively different content and whether reliance was reasonable requires consideration of each driver's specific circumstances and experience in the industry. (Doc. No. 439 at 24-25).

The Court finds that common issues predominate for Plaintiffs' fraud claim. The nature of misrepresentations Defendants allegedly made to the class members in the present case are fundamentally the same – that Defendants' lease purchase program offered income and mileage opportunities with an average of 2400-2700 miles per week or $1.45-$1.85 cents per mile, and Plaintiffs have presented evidence that members of the class received materially uniform misrepresentations from Defendants. *See Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 571 (N.D.

9

Ohio 2003) ("Fraud claims 'based on uniform misrepresentations made to all members of the class' are appropriate for class certification, but where there are 'material variations in the nature of the misrepresentations made to each member of the proposed class,' certification is improper.") (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)).

    b. *Count Three: Misrepresentation About the Owner Operator Program*

Plaintiffs assert that their negligent misrepresentation claim is certifiable for the same reasons and to the same extent as the fraud claim because whether Defendants acted intentionally or negligently turns on the evidence of Defendants' knowledge and can be established on a class-wide basis without testimony from the individual class members. (Doc. No. 426 at 25). Defendants assert that class certification on Plaintiffs' negligent misrepresentation claim should be denied for the reasons they contend class certification on Plaintiffs' fraud claim fails. (Doc. No. 439 at 27). For the same reasons the Court found common issues predominate for Plaintiffs' fraud claim, the Court finds that common issues predominate for Plaintiffs' negligent misrepresentation claim.

    c. *Count Four: Procedural and Substantive Unconscionability*

Plaintiffs assert that the question of procedural unconscionability is common to the class and appropriately decided on a class-wide basis because the circumstances at the time the parties executed the Contract and Lease (together the "Agreement") are the same for the class. (Doc. No. 426 at 27-28). In support, they produce evidence that Defendants set forth the Agreements on an integrated series of pre-printed forms and did not allow for negotiation; that Defendants required drivers to sign the Western Contract as a condition of signing the New Horizons Lease; that Defendants did not give drivers the actual Agreements to review, but instead required them to review the lengthy Agreements on their cell phones; and that Defendants only offered drivers one-way transportation to the place of signing giving drivers no practical way home if they refused to

10

sign. (*Id*. at 27 (citing Doc. No. 426-2 ¶¶ 11-17; Doc. No. 426-3 ¶¶ 10-15; Doc. No. 426-6 ¶¶ 11-17; Doc. No. 426-5 ¶¶ 10-17; Doc. No. 426-9 ¶¶ 10-16)). Plaintiffs argue that substantive unconscionability is common to the class and appropriately decided on a class-wide basis because the terms of the Agreement are the same for the class. (*Id*. at 27-28).

In their response, Defendants assert that individualized inquiries will predominate over common questions for Plaintiffs' procedural unconscionability claim because some drivers felt like they had "ample time" to look at the Agreement before they signed. (Doc. No. 439 at 28-29; Doc. No. 439-5 ¶ 9; Doc. No. 439-7 ¶ 9; Doc. No. 439-13 ¶ 9; Doc. No. 439-14 ¶ 9; Doc. No. 439-9 ¶ 9; Doc. No. 439-11 ¶ 9; Doc. No. 439-4 ¶ 9; Doc. No. 439-6 ¶ 8; Doc. No. 439-12 ¶ 9; Doc. No. 439-16 ¶ 10; Doc. No. 439-15 ¶ 10). Defendants also assert that substantive unconscionability would need to be analyzed on an individualized basis because there are different versions of the contract documents. (Doc. No. 439 at 28; Doc. No. 439-2 ¶ 15).

In their reply, Plaintiffs assert that the questions of how long drivers had to review the agreements and the adequacy of that amount of time does not need to be resolved at the class certification stage. Rather, Plaintiffs contend that they have met the requirement for class certification by presenting sufficient evidence to show that a fact finder could decide the issue of procedural unconscionability in favor of Plaintiffs based on common evidence. (Doc. No. 454 at 12). Plaintiffs argue that common questions also predominate their substantive unconscionability claim, noting that Defendants fail to identify any differences between the different variations of the contract. (*See id*. at 12-13). Plaintiffs argue that this is because there are no material differences between the versions of the Agreements, asserting that the allegedly unconscionable provisions of the Agreements exist in all of the Agreements Defendants produced in discovery. (*Id*. at 13 ("Therefore, if the Court finds the relevant terms substantively unconscionable, the similar terms

11

in the Agreements of the class members are equally unconscionable."). Based on the foregoing, the Court finds that Plaintiffs have met their burden of showing that common questions predominate for their unconscionability claims.

### d. Count Five: Unjust Enrichment due to Employee Misclassification

Plaintiffs assert a claim for unjust enrichment if the Court finds the Agreement is unconscionable and, therefore, unenforceable. A claim for unjust enrichment requires proof of:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for [defendant] to retain the benefit without payment of the value thereof.

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Plaintiffs argue that the question of whether Defendants were unjustly enriched by their use of the Agreements can be proved through generalized class-wide proof. (*See* Doc. No. 426 at 28). Specifically, Plaintiffs assert that, because the Agreements were the same for all class members, the question of whether the Agreements conferred a benefit upon Defendants is common to the class. Plaintiffs further assert that the question of whether Defendants appreciated the benefits received by virtue of the Agreements and accepted those benefits under the circumstances that make retention of the benefits unconscionable turns on Defendants' knowledge and the circumstances surrounding their use of the Agreements, which are facts that are also common to the class. (*Id*. at 28-29).

In their response, Defendants assert the issues of whether the drivers were misclassified and whether plaintiffs conferred a benefit on Defendants that would be inequitable for them to retain would need to be analyzed on an individualized basis. (Doc. No. 439 at 30-31). In their reply, Plaintiffs note that the Court already determined that the misclassification question is common to the class when it certified the FLSA collective action in this case. (Doc. No. 454 at 13

(citing Doc. No. 166)). Plaintiffs argue that determining the benefit conferred upon Defendants by the alleged misclassification is susceptible to class-wide proof, asserting that evidence of the operating expenses that Plaintiffs claim Defendants unlawfully shifted onto the drivers as a result of the misclassification can be found in each driver's weekly settlement, which will allow the calculation of the profits to be disgorged. (*Id*. at 14). The Court finds that common issues predominate for Plaintiffs' unjust enrichment claim.

  e. *Count Six: Federal Forced Labor*

To establish a claim under the federal Forced Labor statute, 18 U.S.C. § 1589, Plaintiffs must show that Defendants knowingly provided or obtained their labor or services by means of "serious harm or threats of serious harm," "the abuse or threatened abuse of law or legal process," or "any scheme, plan, or pattern intended to cause [them] to believe that, if [they] did not perform such labor or services, that [they] or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). The statute defines serious harm as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 § 1589(c)(2).

Plaintiffs assert that if the jury finds that the threat of harm contained in Plaintiffs' Agreements was sufficiently coercive to force workers to work for Defendants, that finding would apply on a class-wide basis as class members signed substantially similar Contracts and Leases. (Doc. No. 426 at 30). Plaintiffs also assert that the question of whether Defendants knowingly benefitted from the threats can be answered on a class-wide basis because it turns on Defendants' records, knowledge, and intent in drafting and utilizing the Contract and Lease. (*Id*. at 31).

13

In their response, Defendants contend that "[w]hether a reasonable person would feel coerced to continue based on the terms of the agreements, is undoubtedly an individualized inquiry, which would again be required to determine whether any Driver continued working against their will because they felt threatened with serious financial harm." (Doc. No. 439 at 33).

The question of whether a threat of harm is sufficiently coercive is evaluated according to an objective "reasonable person" standard. 18 § 1589(c)(2). As a result, contrary to Defendants' position, there will be no need for individual inquiries to determine whether the threat of harm contained in Plaintiffs' Agreements was sufficiently coercive to force workers to work for Defendants. *See e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class."). The Court finds that Plaintiffs have met the predominance requirement for their forced labor claim.

    *f.*  *Count Seven: Truth in Leasing Act Violations*

Plaintiffs assert that the issue of whether the Lease and Contract violate the Truth in Leasing Act, 49 U.S.C. § 14704 ("TILA"), is subject to generalized proof and applicable to the class as a whole because Defendants entered into substantively identical Contracts and Leases with all Plaintiffs. (Doc. No. 426 at 32). Accordingly, Plaintiffs argue that the fact finder can look at one Contract and Lease and decide for the entire class whether the Contract and Lease violated the TILA. (Doc. No. 426 at 32 (citing *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674, 2018 WL 11225871, at *10 (E.D. Tenn. Mar. 2, 2018) ("[T]he issue of whether the [Agreements] violate the [TILA] regulations is subject to generalized proof and applicable to the class as a whole. This generalized issue of liability predominates over issues subject to individualized proof.")).

In their response, relying exclusively on out of circuit authority, Defendants argue that certification of Plaintiffs' TILA claim is not proper due to differences in individualized damages. (*See* Doc. No. 439 at 34-35 (citing *Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 339 F.3d 1001, 1012 (8th Cir. 2003) and *Owner Operator Indep. Drivers Ass'n v. FFE Transp. Servs.*, 245 F.R.D. 253 (N.D. Tex. 2007)). However, "individual damages calculations do not preclude class certification under Rule 23(b)(3)" in the Sixth Circuit. *Hicks*, 965 F.3d at 460. Accordingly, the Court finds that common issues predominate for Plaintiffs' TILA claim.

    g.  *Count Eight: Breach of Contract with Respect to Compensation Schedule*

To establish a claim for breach of contract under Tennessee law, Plaintiffs must establish: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *See Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). Plaintiffs assert that common questions predominate with respect to this claim because all class members signed substantially the same Contract Hauling Agreement with the same compensation terms and were all compensated by Defendants in the same way. (Doc. No. 426 at 34).

Defendants argue that the issue of breach will be subject to only individualized proof because not all drivers had the same versions of the contract or were paid under the same compensation structure. (Doc. No. 439 at 36). In their reply, Plaintiffs reiterate that to determine whether the contract was breached and how much a driver is due for that breach is simply a matter of determining the number of miles driven each week as reported on driver's weekly settlement sheets and recalculating the amount that should have been paid for those miles under the wage term in the Contract. (Doc. No. 454 at 19). The Court finds that Plaintiffs have met the predominance requirement for their breach of contract claim.

15

2. Superiority

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In undertaking this analysis, the Court examines four factors:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

The Court finds that these factors weigh in favor of class certification. First, the relatively small amount of individual damages and the similarity of claims give class members little interest in individually controlling separate actions. Second, concentration of these claims in this Court is desirable, as it will streamline the resolution of the claims and conserve judicial and litigation resources. Finally, the Court is aware of no particular difficulties associated with the management of this class action, especially given the current stage of the litigation. Thus, for purposes of Rule 23(b)(3), a class action is superior to other methods of adjudication in the instant case.

3. Class Definition and Ascertainability of the Class

Under the ascertainability requirement, Plaintiffs must show "that the members of the class [are] *capable* of specific enumeration." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 425–26 (E.D. Mich. 2021) (quoting *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (emphasis in original). This requirement is satisfied with a class description that is sufficiently definite so that it is administratively feasible for a court to determine whether a particular individual is a member by reference to objective criteria. See *Cole*, 839 F.3d. at 541; *Young*, 693 F.3d at 538–39.

In the present action, Plaintiffs seeks to certify a class with the following description:

> All truck drivers who leased a truck from New Horizons Leasing, Inc. to drive for Western Express, Inc. who executed a Contract Hauling Agreement at any time during the period from the inception of the Owner Operator Program in 2014 up through the date of final judgment herein.

(Doc. No. 425). The Court agrees with Plaintiffs that the class definition is both definite and relies upon objective criteria to determine membership. Specifically, membership in the class is determinable through records maintained by Defendants. (*See id*. at 18). The Court notes that Defendants do not raise any objection relating to the ascertainability requirement. (*See* Doc. Nos. 439, 462). As such, the Court finds that the definition the class is sufficiently definite. With that, the Plaintiffs have carried their burden in establishing that their proposed class should be certified under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE