# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **JOHN ELMY, et al.,** | |
| **Plaintiffs,** | **CIVIL NO. 3:17-cv-01199** |
| **v.** | **Judge Campbell/Frensley** |
| **WESTERN EXPRESS, INC., et al.,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE AND RULE 23 CLASS ACTION SETTLEMENT

Michael J.D. Sweeney, Esq. (Admitted PHV)
Emily Sullivan, Esq. (Admitted PHV)
GETMAN, SWEENEY & DUNN PLLC
260 Fair Street
Kingston, NY 12401
Tel: (845)-255-9370
Fax: (845)-255-8649
E-mail: msweeney@getmansweeney.com

Justin L. Swidler, Esq. (Admitted PHV)
Joshua Boyett, Esq. (Admitted PHV)
Swartz Swidler, LLC
1101 Kings Hwy N., Ste 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417
Email: jswidler@swartz-legal.com

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

HISTORY SINCE THE MOTION FOR PRELIMINARY APPROVAL............................ 1

LEGAL ARGUMENT .............................................................................................. 2

   I.   Final Approval of the Settlement Is Appropriate................................................ 2

     A.  The Notice and Claims Process Satisfied Rule 23(c) and Due Process ...........................5

     B.  There Is No Collusion or Fraud Involved in the Proposed Settlement and the Settlement Was Negotiated at Arm's Length (Factor 1) ......................................................5

     C.  While Plaintiffs Believe Their Position Is Strong, Continued Litigation Through Trial and Appeal Would Be Complex, Costly, and Protracted (Factors 2 and 4)......................6

     D.  The Parties Are at an Advanced State of the Proceedings and Have Completed a Significant Amount of Discovery (Factor 3).....................................................8

     E.  Class Counsel, Who Have Adequately Represented the Class, and Defendants' Counsel Believe the Settlement Is Fair, Reasonable, and Adequate (Factor 5) .............................9

     F.  Reaction of the Class (Factor 6) .....................................................................12

     G.  The Settlement Is Consistent with Public Policy (Factor 7). ..........................................15

     H.  The Proposed Settlement Treats All Class Members Equitably Relative to One Another 16

     I.  The Proposed Settlement Resolves Bona Fide Disputes...............................................17

  II.  The Terms of Class Counsel's Proposed Attorneys' Fees are Fair .................................. 19

CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baouch v. Werner Enters.*,
2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014)........................................................11

*Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*,
979 F.3d 491 (6th Cir. 2020) ...................................................................................................15

*Busby v. Bonner*,
No. 2:20-CV-2359-SHL-ATC, 2021 WL 4127775 (W.D. Tenn. Jan. 28, 2021) .....................3

*Camp v. Progressive Corp.*,
2004 WL 2149079 (E.D. La. Sept. 23, 2004) ...........................................................................5

*Campbell v. C.R. England, Inc.*,
2015 U.S. Dist. LEXIS 134235 (D. Utah Sept. 30, 2015) ......................................................11

*In re Cardizem*,
218 F.R.D. 508 (E.D. Mich. 2003) ..................................................................................4, 9, 15

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
424 F. Supp. 3d 456 (E.D. La. 2020) ......................................................................................14

*Cilluffo v. Cent. Refrigerated Servs., Inc.*,
No. ED12CV00886VAPOPX, 2018 WL 11374960 (C.D. Cal. Apr. 3, 2018) .......................10

*In re Cincinnati Policing*,
209 F.R.D. 395 (S.D. Ohio 2002) ..............................................................................................6

*Clark Equip. Co. v. Int'l Union*,
803 F.2d 878 (6th Cir. 1986) .....................................................................................................4

*Collins et al. v. Sanderson Farms, Inc., et al.*,
568 F.Supp.2d 714 (E.D. La. July 9, 2008) ..............................................................................5

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...................................................................................................6

*Craig v. FedEx Ground Package Sys. (In re FedEx Ground Package Sys.)*,
792 F.3d 818 (7th Cir. 2015) ...................................................................................................18

*Crawford v. Lexington-Fayette Urb. Cty. Gov't*,
No. CIV. A. 06-299-JBC, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ..................................3

Case 3:17-cv-01199   Document 516-1   Filed 08/01/22   Page 3 of 26 PageID #: 5932

*Davis v. Omnicare, Inc.*,
    No. 5:18-CV-142-REW, 2021 WL 1214501 (E.D. Ky. Mar. 30, 2021) ...............................16

*Fitzgerald v. P.L. Mktg., Inc.*,
    No. 217CV02251SHMCGC, 2020 WL 3621250 (W.D. Tenn. July 2, 2020).........................6

*Fitzgerald v. P.L. Mktg., Inc.*,
    No. 217CV02251SHMCGC, 2020 WL 7764969 (W.D. Tenn. Feb. 13, 2020) ...............16, 17

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d. Cir. 1995)............................................................................................6

*Gokare v. Fed. Express Corp.*,
    No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094870 (W.D. Tenn. Nov. 22,
    2013) .............................................................................................................................15

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .......................................................2

*Hainey v. Parrot*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ...................................................................5

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D.............................................................................................................4, 9

*Keller v. T.D. Bank, N.A.*,
    2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) ...............................................11

*Maddy v. Gen. Elec. Co.*,
    2017 WL 2780741 (D.N.J. June 26, 2017) ...........................................................10

*McGee v. Anne's Choice, Inc.*,
    2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.) ....................10

*Merrill v. Pathway Leasing LLC*,
    No. 16-CV-02242-KLM, 2021 WL 3076848 (D. Colo. July 21, 2021) .................18

*Moore v. Med. Fin. Servs., Inc.*,
    No. 220CV02443MSNCGC, 2021 WL 6333304 (W.D. Tenn. Nov. 30, 2021).....................15

*Morangelli v. Chemed Corp.*,
    275 F.R.D. 99 (E.D.N.Y. 2011) (July 8, 2011)......................................................10

*Moulton v. United States Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) .................................................................................3

Case 3:17-cv-01199   Document 516-1   Filed 08/01/22   Page 4 of 26 PageID #: 5933

*O'Bryant v. ABC Phones of N. Carolina, Inc.*,
    No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22,
    2020) ...............................................................................................................5

*Peck v. Air Evac EMS, Inc.*,
    No. CV 5:18-615-DCR, 2020 WL 354307 (E.D. Ky. Jan. 21, 2020).....................15

*Petrone v. Werner Enters.*,
    2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013)...............................11, 18, 19

*Petrone v. Werner Enters.*
    2017 WL 510884 (D. Neb. Feb. 2, 2017) ..............................................................18

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016)..................................................................14

*Rogers v. Werner Enters.*,
    No. 8:20-CV-468, 2021 U.S. Dist. LEXIS 104653 (D. Neb. June 3, 2021)...........18

*Roseman v. Bloomberg L.P.*,
    1:14 Civ. 02657-DLC-KNF (S.D.N.Y. Oct. 15, 2018)..........................................10

*Rusiecki v. City of Marquette.*,
    64 Fed. Appx. 936 (6th Cir. 2003) .......................................................................15

*Salinas v. U.S. Xpress Enterprises, Inc.*,
    No. 113CV00245TRMSKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018)............3, 4, 10, 17

*Sanders v. W. Express, Inc.*,
    No. 1:20-CV-03137-SAB, 2021 WL 2772801 (E.D. Wash. Feb. 11, 2021)...........18

*Sheick v. Auto. Component Carrier LLC*,
    2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ...................................6

*Steele v. Staffmark Invs., Ltd. Liab. Co.*,
    172 F. Supp. 3d 1024 (W.D. Tenn. 2016)...............................................................4

*Stoneback v. ArtsQuest*,
    2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.)...................10

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................................2

*Thompson v. United Stone, LLC, et al.*,
    2015 WL 867988 (E.D. Tenn. March 2, 2015)................................................4, 17

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .............................................................................2, 3

*West v. Emeritus Corp.*,
  No. 3:15-CV-437, 2017 WL 2880394 (M.D. Tenn. July 5, 2017) ..........................................4

**Statutes**

29 U.S.C. § 216(b) ...........................................................................................................19

29 U.S.C. § 259 ...............................................................................................................19

CAFA ...............................................................................................................................1

Class Action Fairness Act .................................................................................................2

Class Action Fairness Act, 28 U.S.C. § 1715 ...................................................................1

FLSA ........................................................................................................................ *passim*

Truth in Leasing Act .......................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................................3

Margaret M. Cordray, *Settlement Agreements and the Supreme Court*, 48
  Hastings L.J. 9, 36 (1996) ...........................................................................................15

Rule 23 ...................................................................................................................3, 8, 19

Rule 23(c) .........................................................................................................................5

Rule 23(c)(2)(B) ...............................................................................................................5

## INTRODUCTION

The Parties have litigated this matter vigorously since 2017 and have expended a tremendous amount of time and resources in the process. As a result, all the Parties fully understand the risks associated with continuing the litigation. After two mediations over the course of a year before a seasoned wage-and-hour mediator, the Parties have come to a hard-fought settlement that Plaintiffs believe is fair, reasonable, and adequate, and in the best interest of the class. Not only does the settlement provide a fair recovery to each class member, but it also avoids years of additional litigation and the risk of recovering nothing at all.

The Court preliminarily approved the Parties' settlement and notice to Settlement Class Members. The time to object or opt out of the Settlement has passed and 6,285 of 6,287 Settlement Class Members have accepted the settlement without objection.

Now that the Settlement Class Members have had an opportunity to weigh in on the settlement, Plaintiffs make this unopposed motion for final approval of the Settlement Agreement as fair, reasonable, and adequate as to the proposed Settlement Class Members.

## HISTORY SINCE THE MOTION FOR PRELIMINARY APPROVAL

The long history of this litigation, beginning with its commencement in 2017, and the specific terms of the settlement are set forth in detail in the Parties' Motion for Preliminary Approval of the Settlement Agreement. Doc. 511-4. at 8-14.

The Parties' Settlement Agreement was presented to the Court for Preliminary Approval on February 22, 2022. Doc. 511 (Notice of Motion), Doc. 511-4 (Settlement Agreement). On March 10, 2022, Defendants caused the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, to be served on the U.S. Department of Justice and the attorneys general of all States in which Class Members reside. Decl. of Aisha Lange on Implementation of CAFA Noticing

1

("Lange Decl."). More than 90 days have passed since the required notice was served on the appropriate officials. To date, no notice of any objection to the Settlement has been received from any of the Federal and State officials served. As such, compliance with the Class Action Fairness Act has been achieved.

On May 19, 2022, the Court preliminarily approved the Parties' settlement and ordered notice of the settlement to issue to the class. Doc. 511. The Court approved Settlement Services, Inc. ("SSI") as the settlement administrator, approved the form and content of the class notices and attached forms, and directed that notice be issued. *Id.* A final fairness hearing was set for August 29, 2022. *Id.*

Notice issued to 6,287 Drivers on May 27, 2022. Declaration of Robert Hyte ("Hyte Decl.") at ¶ 5. The time to object or opt out of the Settlement ended on June 27, 2022. Of the 6,287 Settlement Class Members, there are no opt outs and only two objected to certain terms. Hyte Decl. at ¶¶ 9, 10. Any additional persons who are not included in Exhibit 3 to the Agreement but who reasonably fall within the class definition will be part of the Settlement with their claims paid from the Reserve Fund established in the Agreement. Doc. 511-2 at § 5.1.2.

## LEGAL ARGUMENT

**I.  Final Approval of the Settlement Is Appropriate.**

The law favors compromise and settlement of collective and class action suits. *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions") (hereinafter *UAW*); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."); *In re Telectronics Pacing*

*Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement.").

When evaluating both FLSA and Rule 23 settlements for approval, courts are charged with ensuring that the settlement is "fair, reasonable, and adequate." *See Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *3 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (discussing FLSA settlements); *Busby v. Bonner*, No. 2:20-CV-2359-SHL-ATC, 2021 WL 4127775, at *2-3 (W.D. Tenn. Jan. 28, 2021) (discussing Rule 23 settlements). Not surprisingly, the tests for FLSA and Rule 23 settlements overlap in many ways. *See Crawford v. Lexington-Fayette Urb. Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) ("The need for the court to ensure that any settlement of a collective action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"). This settlement, borne of four and a half years of active litigation, meets those tests.

The Sixth Circuit has identified seven factors that guide the inquiry undertaken by the district court in assessing whether a proposed settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion [i.e., whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining]; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *UAW*, 497 F.3d at 631 (*citing Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983)). In 2018, Rule 23 was amended to add an additional factor—whether the proposal treats class members equitably relative to each other. Fed.

R. Civ. P. 23(e)(2)(D). The district court is to address "whether the interests for the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem*, 218 F.R.D. 508, at 522 (E.D. Mich. 2003) (citation omitted). In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 594-595. These factors should also be applied in FLSA cases. *See West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 WL 2880394, *2 (M.D. Tenn. July 5, 2017) (applying factors to FLSA case); *Steele v. Staffmark Invs., Ltd. Liab. Co.*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (noting that the Sixth Circuit has never ruled on the issue but finding that "that FLSA settlements require approval by either the Department of Labor or a court").

In addition to these seven factors, courts may approve an FLSA settlement where such an agreement represents the "resolution of a bona fide dispute over FLSA provisions." *Thompson v. United Stone, LLC, et al.*, 2015 WL 867988, at *1 (E.D. Tenn. March 2, 2015) (quoting *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)); *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *3 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018).

"Given that class settlements are favored, the role of the district court is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned.'" *IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 594 (citations omitted); *Clark Equip. Co. v. Int'l Union*, 803 F.2d 878, 880 (6th Cir. 1986) (same).

4

## A. The Notice and Claims Process Satisfied Rule 23(c) and Due Process

The Court previously approved the form and content of the Class Notices to be distributed to the Class and approved the notice plan set forth in the Settlement Agreement. Doc. 515. The declaration from Robert Hyte, the Director of Operations at SSI, attests to the fact that the Settlement Administrator carried out the Notice procedures specified in the Settlement Agreement in all respects. In addition, although not required by terms of the settlement, Class Counsel voluntarily undertook extraordinary efforts to ensure that all class members who could be contacted were made aware of the Settlement Agreement. Sweeney Decl. ¶ 4. No Class Member has questioned or objected to the adequacy of the Notice. *See*, Hyte Decl. ¶¶ 9, 10. Accordingly, the Court should find that the form and method for notifying the Class Members satisfied the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.

## B. There Is No Collusion or Fraud Involved in the Proposed Settlement and the Settlement Was Negotiated at Arm's Length (Factor 1)

There exists a presumption that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020); *Camp*, 2004 WL 2149079 at *7. Further, "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). In reviewing settlement agreements to determine fairness, courts must recognize the strong presumption in favor of finding that a settlement is fair and reasonable and must remain aware that a settlement is a compromise, "a yielding of the highest hopes in exchange for certainty and resolution." *Collins et al. v. Sanderson Farms, Inc., et al.*, 568 F.Supp.2d 714 (E.D. La. July 9,

2008) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004)); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d. Cir. 1995).

Here, the Parties have been represented by experienced and capable counsel who fiercely litigated this matter for nearly five years. The Parties filed numerous discovery-related motions, including motions to compel, and other motions during the litigation. Similarly, Plaintiffs' motions for class certification and collective certification were both strongly opposed. Hundreds of thousands of pages of documents and millions of data-points were exchanged, allowing the Parties to assess and argue the strengths and weaknesses of their respective positions, as well as perform settlement calculations. Additionally, the Parties reached the settlement with the assistance of an experienced mediator, Hunter Hughes, following two mediation sessions. As there is no collusion or fraud involved in the proposed settlement and the settlement was negotiated at arm's length, the Court should approve the settlement. *See Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 3621250, at *8 (W.D. Tenn. July 2, 2020) (granting final approval of class action settlement where adversarial negotiations lasted more than a year and was the product of two mediation sessions with a third-party mediator).

### C.  While Plaintiffs Believe Their Position Is Strong, Continued Litigation Through Trial and Appeal Would Be Complex, Costly, and Protracted (Factors 2 and 4)

While Plaintiffs believe their legal position is strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010); *see also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and

6

the court. . . . The prospect of such a massive undertaking clearly counsels in favor of settlement.") (internal quotation marks and citations omitted).

The Parties have been hotly litigating this hybrid class and collective action since 2017, and continuing it would be long, arduous, and complex. While much of the written discovery had been completed at the time of settlement, the Parties were in the process of scheduling more than 50 fact depositions. Expert discovery remained in its earliest phase. The discovery and the attending motion work would take many months to complete. The Parties would file dispositive and decertification motions after discovery was completed. A complex trial involving testimony from dozens of witnesses would proceed only after those motions were resolved. Were the Parties to proceed to trial on their claims, final resolution would likely take years after considering the myriad claims and the inevitable appeals which would follow.

There are many potential risks to the Class in litigating to a final judgment. Defendants have aggressively challenged Plaintiffs' legal and factual claims, many of which are the subject of unsettled law. The litigation risk in this case is exacerbated by the complexity of the legal claims and facts, and the challenges of keeping the classes certified through trial. If not for settlement, Defendants would surely seek to decertify the class and collective. If they were successful, continued litigation would require hundreds if not thousands of individual claims to be litigated. For many of these Drivers who may not realize a substantial income, individual litigation is not a reasonable option as their work is not conducive to attending trial and depositions based on a potential—but not guaranteed—financial recovery. The settlement will pay drivers now, rather than require drivers to wait for and risk their recovery on the outcome of dispositive motions, a jury trial, and an (almost certain) appeal.

Considering the Parties' relative positions, the benefits of a settlement outweighed the risks of proceeding to trial. As such, the Settlement Agreement should be approved.

### D. The Parties Are at an Advanced State of the Proceedings and Have Completed a Significant Amount of Discovery (Factor 3)

The Litigation is at an advanced stage, with the FLSA collective action conditionally certified and the Rule 23 classes certified. Further, the Parties have engaged in extensive discovery and motion practice over the past four years. The Parties have propounded and responded to substantial written discovery as to the Parties and over 100 discovery representatives resulting in the production of extensive documentary and electronic discovery; considered hundreds of thousands of pages of relevant documents and millions of data points; and researched applicable and analogous law and potential claims. Plaintiffs have also spent a significant amount of time analyzing Defendants' data in order to build a damages model and calculate damages for the class.

The discovery process as a whole remained contentious, with the Parties briefing a number of discovery issues in motions before the Court and participating in several hearings. *See, e.g.*, Docs. 77, 313, 457. Those discovery motions, including motions regarding the types of documents subject to discovery and the number of representative plaintiffs from which discovery could be taken, were also useful in framing the evidentiary issues for both sides.

Given the advanced stage of the Litigation, as well as the significant discovery and motion practice that had already taken place prior to the second mediation, the Parties are in a strong position to assess the strengths and weaknesses of the various claims and the risks of trial. Accordingly, the Settlement Agreement should be approved.

### E. Class Counsel, Who Have Adequately Represented the Class, and Defendants' Counsel Believe the Settlement Is Fair, Reasonable, and Adequate (Factor 5)

The judgment of Class Counsel that the settlement is in the best interest of the Class "is entitled to significant weight and supports the fairness of the class settlement." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 597; see also *Cardizem*, 218 F.R.D. at 525 ("[I]n approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement.").

Here, the Parties are represented by experienced counsel with a significant specialization in the litigation of class and collective actions within the trucking industry. The settlement was reached during arm's length negotiations following years of contentious litigation and with the assistance of an experienced wage-and-hour mediator, Hunter Hughes, over the course of a year. Plaintiffs are represented by counsel who are well informed and practiced in collective and class wage and hour litigation and are realistic and knowledgeable of the risks of litigation and benefits of the settlement. Accordingly, the judgment of Class Counsel that the settlement is in the best interest of the class should be given significant weight.

Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members. Getman, Sweeney & Dunn, PLLC ("GSD") litigates wage-and-hour collective and class actions on a nationwide basis. GSD is currently litigating wage-and-hour collective and class actions in federal courts in California, Iowa, New York, New Jersey, Pennsylvania, South Carolina, and Wisconsin . GSD has litigated FLSA and other wage-and-hour collective and class actions in Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Massachusetts, Michigan, North Carolina, Ohio, Texas, Washington, Washington D.C., and West Virginia. Courts throughout the country have recognized GSD's skill and experience in wage and hour litigation.

*See, e.g.*, *Roseman v. Bloomberg L.P.*, 1:14 Civ. 02657-DLC-KNF (S.D.N.Y. Oct. 15, 2018) ("The quality of representation for the class was excellent. It was a well litigated case and well-tried case at trial."); *Cilluffo v. Cent. Refrigerated Servs., Inc.*, No. ED12CV00886VAPOPX, 2018 WL 11374960, at *7 (C.D. Cal. Apr. 3, 2018) ("The Court remains impressed by the result achieved in this case and the time and resources invested by Plaintiff's counsel."); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (July 8, 2011) ("Defendants do not challenge the adequacy of the class counsel. They would be hard-pressed to; as another court recently noted, counsel's qualifications are 'stellar' and this element is 'easily met.'"). (*See* Sweeney Decl. ¶¶ 42, 43).

Swartz Swidler is trial counsel in a number of pending wage-and-hour collective and class actions and has been trial counsel in dozens of wage and hour collective and class actions that have resolved with court approval. *See* Doc. 511-3, Swidler Decl. ¶¶ 4, 8-10; *see also Salinas v. U.S. Express Enterprises, Inc.*, 2018 WL 1477127, at *6 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) ("Plaintiffs are represented by Swartz Swidler, who are well-informed and practiced in collective wage and hour litigation, and are realistic and knowledgeable of the risks and benefits of the settlement. Plaintiff's counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members."); *McGee v. Anne's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.) (finding Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.) (finding that Mr. Swidler has "handled numerous class action lawsuits" and "is qualified to represent the class as class counsel"); *Maddy v. Gen. Elec. Co.*, 2017 WL 2780741, at

*7 (D.N.J. June 26, 2017) (*"Plaintiffs' counsel has substantial experience litigating wage and hours class actions. Indeed, attorneys Mr. Swidler and Mr. Swartz have litigated 90 [wage and hour] cases within the last 5 years."); *Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) (finding that Swartz Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *Campbell v. C.R. England, Inc.*, 2015 U.S. Dist. LEXIS 134235, *18 (D. Utah Sept. 30, 2015) (Swartz Swidler, LLC "has a reputation in the trucking industry as being one of the prominent firms to engage in FLSA litigation on behalf of truck drivers"). Plaintiffs' counsel has further been certified as class counsel in similar litigation wherein they represented tens of thousands of over-the-road drivers for alleged violations of state and federal minimum wage laws. *See Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013); *Baouch v. Werner Enters.*, 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014).

Plaintiffs' Counsel and Named Plaintiffs have reviewed the terms of the settlement and believe that the settlement is fair and reasonable and is in the best interest of the Settlement Class Members. Not only will Drivers recover an average of $1,570, but the Settlement will also pay drivers now, rather than require drivers to wait for and risk their recovery on the outcome of dispositive motions, a jury trial, and an (almost certain) appeal.

Likewise, defense counsel King & Ballow has a significant management-side employment practice and are preeminent management-side employment law practitioners. Defense counsel in this case accordingly have extensive and significant experience in the litigation and settlement of significant and substantial employment matters, including class action wage and hour litigation. While Defendants believe their legal position is strong, they also understand there are no

11

guarantees and appreciate the potential risk of liability. Defendants face potential risk in being found liable on one or all of Plaintiffs' claims and believe the settlement reflects a reasonable compromise in exchange for finality and certainty.

Given their vast experience and skill, the opinions of counsel are entitled to substantial deference in considering the fairness and adequacy of the settlement. Here, both Parties' counsel believe the settlement is fair, reasonable and adequate, and should be approved.

### F. Reaction of the Class (Factor 6)

As a result of the Court's preliminary approval of the Settlement, notice issued to 6,287 Drivers on May 27, 2022, informing them of the terms of the settlement, their approximate individual recoveries, and the opportunity to opt out of or object to the Settlement. Hyte Decl. at ¶ 5. The time to object or opt out of the Settlement ended on June 27, 2022. Of the 6,287 Settlement Class Members, there are no opt outs and only two objected to certain terms. Hyte Decl. at ¶¶ 9, 10.

Objector Greg M. Furman has objected to the settlement, stating that the amount he is to be paid from the settlement, $2,500, is "unfair and inadequate." He contends he should be paid more because (1) Defendants allegedly improperly retained $5,000 it held in escrow; (2) he claims he was not able to negotiate his lease and asserts that, if he could have negotiated his lease, he would have negotiated a rate three times what his contract provided; (3) he was not provided fuel surcharges; and (4) he is allegedly due "reasonable restitution" of approximately $200,000 per year.

Initially, the documents submitted by Objector Furman with his objection show that Defendants did credit him for the amount it held in escrow, but that due to charges that Defendants allege were incurred, the amount in escrow did not cover the entire balance. *See* Furman

Objection, attached to Hyte Decl., Objector Furman Operator Settlement, attached to Furman Objection, at 1 (showing "Withdraw from Escrow A" of $5,037.59 as a reimbursement credit against other amounts due). Similarly, the documents show that Objector Furman was provided fuel surcharges. *See id.* at 4.

The other two allegations, that he would have negotiated a better deal if he could have and that he is due reasonable restitution of $200,000 per year, are not legal claims and so do not modify the reasonableness of the settlement. While Plaintiffs and Defendants disagree as to the negotiability of the service agreement and its terms, the remedy for such an alleged violation is not an ex-post-facto renegotiation of the service contract, but instead a granting of benefits to the individual driver who claims benefits were denied because of misclassification; in this case specifically, rights to minimum wages. Objector Furman does not seek such benefits, so his calculations of losses are not based in law.

Mr. James Robert Loar also objects arguing that the settlement distribution is unfair because trainers should be compensated at a higher rate than non-trainers. Mr. Loar's objection is predicated on his contention that trainers work more hours per week than non-trainer contractors and were at times required to spend their own money to purchase supplies for trainees.

Neither of these contentions provide a basis to compensate trainers additional compensation in this settlement than non-trainers. First, neither contention made by Mr. Loar affects Defendants' liability regarding whether it misclassified its lease purchase drivers, the central issue that Plaintiffs must prove to prevail in the litigation. Instead, both arguments go to damages: the first of his positions suggests that because trainers worked more hours, they are owed more compensation, and the second position suggests that because he spent his own money on trainees, he should be reimbursed such amounts which would also increase damages.

13

A settlement allocation formula which favored trainers over other lease purchase drivers is inconsistent with the class claims and should be rejected. First, though trainers may have certain training responsibilities for a trainee, Defendants compensate trainers by paying trainers for all miles driven by either the trainer or trainee, meaning that trainers are compensated extra for training employees; indeed, Defendants' contractors are not required to train any trainees, but voluntarily choose to do so because of the extra compensation provided. Plaintiffs' damages assessment showed that if Plaintiffs prevailed on their minimum wage FLSA claims, Mr. Loar would be due approximately $3,766 (non-liquidated) for unpaid minimum wages, which is moderately less than the average per-week minimum wage violation due for the class as a whole.

Both objectors before the Court have made general objections that their individual recovery from the settlement is less than desired. But neither objector considers the significant risk and delay to which they and other class members would be subjected if the settlement is rejected. Courts regularly overrule objections made by objectors' "wishing-for-more" where such objections fail to account for the legal risks and reality of litigation. *See, e.g. In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("The objectors' armchair-quarterbacking and wishing-for-more does not provide valid grounds to disapprove the settlements."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 492 (E.D. La. 2020) ("What Class Members are missing in terms of dollars they make up for by guaranteed recovery and an end to a decade of litigation. The fact that Class Members wish Taishan was willing to pay more to settle these claims does not warrant unraveling the entire Agreement. The objectors who are unhappy with the amount of their estimated allocation had the right to optout of the Settlement and pursue their claims against Taishan in court. In not opting out, these objectors

14

apparently recognize the inherent difficulties and uncertainties associated with pursuing this option, and their actions suggest that final approval of the Settlement is warranted.")

Given that 6,285 Settlement Class Members (or 99.9%) chose not to object to the Settlement and its terms, this factor weighs in favor of approval. *Moore v. Med. Fin. Servs., Inc.,* No. 220CV02443MSNCGC, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021), *report and recommendation adopted*, No. 220CV02443MSNCGC, 2022 WL 178835 (W.D. Tenn. Jan. 19, 2022) ("When there are few objections, that fact is indicative of the adequacy of the settlement."); *Peck v. Air Evac EMS, Inc.,* No. CV 5:18-615-DCR, 2020 WL 354307, at *6 (E.D. Ky. Jan. 21, 2020) (" If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Gokare v. Fed. Express Corp.,* No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094870, at *6 (W.D. Tenn. Nov. 22, 2013) ("The small number of objections and opt outs, particularly in a Settlement Class of this size, itself demonstrates the fairness, adequacy, and reasonableness of the Settlement."); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'")

**G. The Settlement Is Consistent with Public Policy (Factor 7).**

Like other jurisdictions, the Sixth Circuit recognizes a strong public policy in favor of settlements. *Rusiecki v. City of Marquette.*, 64 Fed. Appx. 936, 936 (6th Cir. 2003); *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 496 (6th Cir. 2020), *citing Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation."); Margaret M. Cordray, *Settlement Agreements and the Supreme Court*, 48 Hastings L.J. 9, 36 (1996) (noting that settlement "decreases the expense and risk of

15

litigation for parties" and "enables courts to conserve scarce judicial resources and to reduce their backlog"). The settlement here is consistent with that policy because it resolves a pending case on behalf of a class of more than 6,000 individuals and avoids a jury trial and likely appeals that would affect these class members. Because the settlement represents a fair settlement of a bona fide dispute, public policy weighs heavily in favor of approval.

### H. The Proposed Settlement Treats All Class Members Equitably Relative to One Another

The Settlement Agreement treats all Settlement Class Members equitably by applying the same formula to each Settlement Class Member to determine their Individual Settlement Payment. Specifically, each Settlement Class Member is entitled to a uniform Minimum Payment of $300.00. The remaining funds are then proportionally distributed to Settlement Class Members based on the number of weeks they worked as reflected in the Revenue Data. (Settlement Agmt. §§ 5.1.1, *et seq.*). While Settlement Class Members' Individual Settlement Payments will differ, this is because they worked different numbers of weeks, not because they are being treated differently under the settlement. *See, e.g.*, *Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) (preliminarily approving settlement in which "[e]ach specific calculation will hinge on variables particular to a participant as included in a set formula . . . each claimant's award is calculated equitably based on the miles that person drove (in the case of drivers) or the number of weeks that person worked (in the case of dispatchers)"); *Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 7764969, at *13 (W.D. Tenn. Feb. 13, 2020) (preliminarily approving settlement that used a point-based system that weights individual class members' awards by the number of weeks worked and other factors).

16

While Class Counsel request that the Named Plaintiffs and Original Discovery Representatives be paid a Service Payment,[1] this is not inconsistent with finding that Settlement Class Members are treated equitably under the settlement. *See, e.g.*, *Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 7764969, at *13 (W.D. Tenn. Feb. 13, 2020) (finding that class members were treated equitably under settlement that awarded service payments to the representative for the FLSA collective and to the Class Representatives for the two state classes and that "[t]he proposed service payments are similar to other collective and class action incentive awards approved by courts in this Circuit").

For all the reasons stated above, the settlement is fair, reasonable, and adequate, and should be approved by the Court.

## I.  The Proposed Settlement Resolves Bona Fide Disputes.

Courts may approve an FLSA settlement where such an agreement represents the "resolution of a bona fide dispute over FLSA provisions." *Thompson v. United Stone, LLC, et al.*, 2015 WL 867988, at *1 (E.D. Tenn. March 2, 2015) (quoting *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)); *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *3 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018).

Here, Plaintiffs contend that they were misclassified as independent contractors and that, because they were in fact employees, Defendants were required to pay them the minimum wage for every hour worked. Thus, this matter seeks restitution for minimum wage violations (*i.e.,* payment for the difference between what Defendants paid Plaintiffs and $7.25 per hour).

---

[1] Plaintiffs have moved the Court separately for approval of Service Payments to the Named Plaintiffs and Original Discovery Representatives. *See* Plaintiffs' Motion for Approval of Service Payments and Class Counsels' Fees and Costs.

Defendants strongly dispute that the Plaintiffs and Settlement Class Members were employees. Plaintiffs allege that Defendants exercised a level of control over Drivers' work that made them employees under the FLSA, while Defendants claim that Drivers exercised the type of independence that made them independent contractors. The law in this area remains unsettled. *Compare Craig v. FedEx Ground Package Sys. (In re FedEx Ground Package Sys.)*, 792 F.3d 818, 821 (7th Cir. 2015) (FedEx truck delivery drivers were not misclassified and were legally employees); with *Merrill v. Pathway Leasing LLC*, No. 16-CV-02242-KLM, 2021 WL 3076848, at *12 (D. Colo. July 21, 2021) (finding Lease Purchase drivers to be independent contractors). If Plaintiffs lost on this issue, they would recover no FLSA damages at all.

Even if the Plaintiffs were successful in establishing that Drivers were employees, the Parties dispute what constitutes work time under the FLSA. What constitutes work is critical to FLSA damages liability—the more hours that constitute work, the greater the minimum wage damages. That law is in flux. For example, the law regarding the compensability of sleeper berth time for over-the-road drivers, such as the Drivers in this case, remains subject to uncertainty and risk to both sides. *See Sanders v. W. Express, Inc.*, No. 1:20-CV-03137-SAB, 2021 WL 2772801, at *7 (E.D. Wash. Feb. 11, 2021) (summarizing cases that have come to different conclusions). Indeed, in *Petrone v. Werner Enterprises*, the *same* court—without appellate review—reached inconsistent results, demonstrating that there is a bona fide dispute under the FLSA whether such time is compensable. Compare *Werner I*, 121 F.Supp.3d 860 (D. Neb. 2015) (Strom, J.) (entering summary judgment for plaintiffs and finding that trucking companies must pay over-the-road drivers for sleeper berth time in excess of 8 hours per day) with *Werner II*, 2017 WL 510884 (D. Neb. Feb. 2, 2017) (Smith Camp, J.) (vacating summary judgment award and holding that whether sleeper berth time is compensable must be determined by jury); *see also Rogers v. Werner Enters.*,

No. 8:20-CV-468, 2021 U.S. Dist. LEXIS 104653, at *9 (D. Neb. June 3, 2021) (copycat claim making identical allegations as *Petrone,* alleging trainees were denied minimum wage due to excess sleeper berth time; newly-appointed Judge Buescher, who replaced the late Judge Smith-Camp, denied a motion to dismiss, holding that the Court was not bound to either of the prior *Petrone* holdings). Other issues in dispute include whether Defendants acted willfully and therefore should be subject to a third year of FLSA liability, 29 U.S.C. § 216(b), and whether Defendants can show that they acted in good faith and should be relieved of liquidated damages. 29 U.S.C. § 259.

Defendants aggressively challenged Plaintiffs' positions on all of these issues, and none were resolved. Plaintiffs' Rule 23 class claims are also in dispute. Defendants challenge each of Plaintiffs' Rule 23 claims, many of which are novel claims in the context of Drivers. For example, Plaintiffs' federal Forced Labor Claim has never been upheld in the context of misclassified drivers. Plaintiffs' state law and Truth in Leasing Act claims require multi-prong showings to establish liability, and Defendants intend to attack each prong. (*See* Doc. 173, Defendants' Motion to Dismiss). The settlement eliminates the risk that Drivers would recover nothing at all if Plaintiffs were unable to establish their claims.

## II.     The Terms of Class Counsel's Proposed Attorneys' Fees are Fair

The Settlement Agreement allows for Class Counsel to apply to the Court for an award of attorneys' fees of 33 and 1/3% of $15,000,000.00 and $53,307.05 in costs. (Settlement Agmt. § 5.1.6). As set out in Plaintiffs' Motion for Approval of Service Payments and Class Counsels' Fees and Costs, Class Counsels' requested fees and costs are fair and reasonable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for final approval of the Settlement Agreement.

Dated: August 1, 2022

Respectfully Submitted,

*/s/ Michael J.D. Sweeney*

Michael J.D. Sweeney (*pro hac vice*)
Emily J. Sullivan (*pro hac vice*)
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
Email: msweeney@getmansweeney.com

Justin L. Swidler, Esq. (*pro hac vice*)
Joshua S. Boyette (*pro hac vice*)
Swartz Swidler, LLC
1101 Kings Hwy N., Ste 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417
Email: jswidler@swartz-legal.com